## UNITED STATES v. MURRAY.

District Court, D. Maryland.
July 11, 1931.

Milton H. Talkin, Asst. U. S. Atty., of Baltimore, Md.

R. Palmer Ingram, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The defendant is indicted for the illegal transportation and possession of intoxicating liquor. In accordance with the now well-established practice, a motion has been made by the defendant in advance of the trial, to suppress evidence proposed to be offered against him in the trial of the case on the ground that it was obtained by an unreasonable and therefore allegedly illegal seizure, in contravention of the Fourth Amendment to the Constitution.

The facts are within a narrow compass. The evidence in support of the motion offered by the defendant consists of the testimony of certain Prohibition Agents who made the seizure and contemporaneous arrest of the defendant. The substance of this testimony is as follows: Agent Thomas F. Andrew, who had been a prohibition agent for about a year and was formerly an automobile salesman, while patrolling the Baltimore-Washington state highway, noticed an automobile of a particular license number (127371), described as a dark blue Chevrolet five-passenger two-door closed car, on April 15, 1931. His attention was attracted to this car, because, as he described it, the body of the car was "riding high" in the rear. The significance of this fact to him, based on his experience as Prohibition Agent in discovering and detecting illegal transportation of liquor, arose from the fact that it has become necessary in order to escape detection in the transportation of liquor, for ordinary passenger automobiles to have additional leaves added to the rear springs of the car so that when heavily loaded with liquor the body of the car will, by reason of the added resistance of the springs, give no indication of an unusual load by the body of the car being obviously depressed on the springs as would be the case if resistance of the springs were not increased by the addition of the extra leaves. The effect of thus equipping ordinary passenger cars is to make them noticeable or abnormal in appearance when the rear of the car is empty and also to make them entirely normal in appearance when heavily loaded.

The defendant also offered the testimony of a witness engaged in the business of making and supplying springs for automobiles, that it is not unusual to add leaves to the springs of passenger automobiles where, for any reason, the springs of the particular car are not sufficiently stiff for comfortable use of the car and that the number of leaves added varies with the particular car and the condition of its particular springs. But from the testimony of the same witness it also appeared that the effect of so adding additional leaves to the ordinary passenger automobile was not ordinarily to make the appearance of the automobile in the rear abnormal but only to make the rear set about one inch higher. That is to say, the rear of the car would not seem to be "riding high," as was the case with the Chevrolet car mentioned in the evidence.

I, therefore, find as a fact under the evidence that the ordinary passenger automobile such as in this case, so equipped with extra leaves in the springs to the unusual and abnormal extent of making it "ride high in the rear" so noticeably as in the particular case, is such an unusual condition of a passenger automobile and so identified in the experience of the Prohibition Agents with the purpose of illegal transportation of liquor, that a car of such an appearance is a very reasonable object of strong suspicion to Prohibition Agents who have specialized in detecting such offenses.

Agent Andrew, having noted the particular appearance of this automobile and having made a memorandum of the license number, again saw the same automobile on the Baltimore-Washington road on April 29, 1931, about 3 p. m., while he and other agents

were in a government automobile patrolling the road to detect violations of the law. On this latter occasion the blue Chevrolet was again being driven toward Baltimore and Agent Andrew again noticed that it was "riding high" in the rear. About two and one-half hours later on the same afternoon the Prohibition Agents, having reversed their direction, were proceeding toward Baltimore on what is known as the Crain highway when Agent Andrew again noticed the same blue Chevrolet automobile proceeding toward Washington from Baltimore, and this time he noted that the rear of the car was not "riding high," but that the body appeared to be entirely normal in relation to the springs. He immediately exclaimed to his associate, "There goes a load." At the first convenient turning point the government car turned around and gave chase to the blue Chevrolet. On the prior occasions when Agent Andrew had noticed the car in passing he got the general impression from observation as it was receding from his vision that the springs were extra thick, but of course the rate of speed of the passing cars was such that he had no opportunity for detailed inspection. As, however, the government automobile was overhauling the blue Chevrolet on the last occasion mentioned the unusual thickness of the rear springs was clearly noticeable to him. Agent Andrew stepped out on the running board of his car on the right side as the government car drew abreast of the blue Chevrolet on its left. At this time, Agent Andrew in lookng through the windows of the Chevrolet, saw that its only passenger was the driver and that the front seat by the driver had been removed and the space thus made in the car, together with the rear portion of the car, carried large paper cartons of the kind frequently, if not customarily, used for holding liquor, although the contents of the cartons were not visible. There was a rug or some similar covering over a large part of the cartons, but it did not suffice to entirely conceal them. Agent Andrew requested the driver of the car to pull over to the side of the road, which he did. He then showed his badge and asked the driver what was in the car. To this particular question he received no reply. The agents then searched the blue Chevrolet and found fifteen cases of whisky, each case containing six gallons. The driver at first gave the name of Tom Davis and said, "Can't we fix this up." The driver's license or permit showed that his name was Harry Murray, and he is the defendant in this case. After the search he said that the liquor was "Bourbon, I

guess" and that he paid $8 or $10 a case for it and had gotten it in Baltimore, from a man that he had met on the street (apparently by appointment), but whom he did not previously know. When asked "How did this man know you?" Murray replied, "Same as you did, I guess, by the springs." Murray, however, stated that he did not know who put the heavy springs on the car. When the automobile was examined in detail it was found that it had the abnormally large number of 14 leaves in each rear spring thus making the thickness of the springs 3½ inches as compared with 2 inches in the normally built car of that type.

■■ The search and arrest was made without a warrant. The crime, since the passage of the Jones Act (27 USCA §§ 91, 92), is of the grade of a felony. The question in the case is whether the seizure of the liquor found in the car, samples from which are proposed to be offered in evidence by the government at the trial of the case, constitutes an unreasonable search which is prohibited by the Fourth Amendment. The applicable law is fully and clearly stated in two recent decisions of the Supreme Court: Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Husty v. United States, 282 U. S. 694, 51 S. Ct. 240, 241, 75 L. Ed. 629. The guiding principle in such cases is summarized in the Husty Case by Mr. Justice Stone as follows: "The Fourth Amendment does not prohibit the search without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. * * * To show probable cause it is not necessary that the arresting officer should have had before him legal evidence of the suspected illegal act. Dumbra v. United States, 268 U. S. 435, 441, 45 S. Ct. 546, 69 L. Ed. 1032; Carroll v. United States, supra. It is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched."

■■ Applying this principle to the facts of this case I find that the prohibition agents believed in good faith and on reasonable grounds that the suspected automobile was illegally transporting liquor and their action in making the arrest and seizure was, therefore, lawful. The basis on which they

acted, it seems to me, was as reasonably convincing to them as the information on which the agents properly acted in the Carroll and Husty Cases, above mentioned. And it seems to me my conclusion on the facts is consistent with the decisions of the Circuit Court of Appeals for the Fourth Circuit in the somewhat similar case of Ash v. United States, 299 F. 277, and Milam v. United States, 296 F. 629. In the cases above cited the information possessed by the agents and on which they acted related largely to the known character and reputation of the persons arrested, while in this case the basis on which the agents acted related largely to the character of the vehicle rather than to that of the driver. However, this seems to me to be an immaterial difference especially as the opinion of Chief Justice Taft in the Carroll Case lays emphasis, under section 26, title 2 of the National Prohibition Law (27 USCA § 40), upon the seizure of the contraband liquor and its destruction rather than on the incidental arrest of the transporter. The illegal transportation in the Carroll Case, where the search and seizure of the automobile was upheld, was under the then existing acts of Congress, only a misdemeanor. The agents, therefore, who then made the arrest were justified in doing so only on the basis of observing a misdemeanor committed in their presence. Since then, the Jones Act has made the transportation of the quantity of liquor involved in the instant case, a felony. It is elementary law of criminal procedure that a peace officer may arrest without warrant on reasonable suspicion of felony without the necessity of personally observing the commission of the offense.

■ While the appearance of the blue Chevrolet car might have meant nothing to the ordinary observer, it had special significance to Mr. Andrew, who, by virtue of his experience as a prohibition agent, had had occasion to study various devices used by "bootleggers" to escape detection in the transportation of liquor. It seems to me that we should be practical in applying the principles of the law to new situations. If the "bootleggers" devise a system of camouflage to escape detection, it is reasonable for the prohibition agent to penetrate the disguise by using and applying his special experience in detecting crime. New methods of defense naturally lead to new methods of offense. The question of what constitutes probable cause seems to me must be determined from the standpoint of the agent with his special skill and knowledge rather than from the standpoint of the average citizen under similar circumstances. Thus, symptoms of a new disease might be meaningless to the average practitioner of medicine, but clearly recognized by the modern specialist in that branch of the profession.

■ The conditions under which an automobile may be stopped and searched while moving on the public highway are radically different from those justifying a search of a private dwelling. The latter may not be searched at all without a warrant except as incidental to a valid arrest of a person. Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409. Nor may prohibition agents stop and search any automobile at will. There must be some probable cause for the search of the particular automobile. I think there was such a probable cause in this case.

For these reasons I conclude that the motion should be overruled, and an order will be accordingly so entered.