**UNITED STATES of America**

v.

**William Edward WISE, Roosevelt Hines and Hannah Bryant.**

**UNITED STATES of America**

v.

**Hannah BRYANT.**

**Cr. A. Nos. 25396, 25406.**

United States District Court
D. Maryland,
Criminal Division.

Jan. 17, 1961.

Leon H. A. Pierson, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

James A. Ehrhart, Baltimore, Md., for Wise.

Alan H. Murrell, Baltimore, Md., for Hines and Bryant.

CHESNUT, District Judge,

In case No. 25396 the three defendants were jointly indicted for (1) concealing non-tax paid liquor and (2) possession of such liquor. The indictment was based on Title 26 U.S.C. §§ 5601(a) (12); 5205(a) (2) and 5604(a) (1); and Title 18 U.S.C. § 2. In the first count of the indictment it was alleged that on or about August 3, 1960 "in and near the premises known as 1710 N. Wolfe Street, Baltimore, in the State and District of Maryland" the defendants "did conceal on said premises and in a certain 1955 Chevrolet sedan bearing Maryland license CA–8124 (1960), approximately 14 gallons and 2 pints of distilled spirits on which the

tax imposed by the laws of the United States had not been paid or determined, and which distilled spirits had been removed to a place other than the bonded warehouse provided by law." The second count made the same charges with respect to the time and place of possession of the non-tax paid spirits.

In case No. 25406 the United States Attorney filed an official Information against the defendant in four counts variously stated but in substance charging her with the conduct of lottery operations on or about August 3, 1960 without required registration and without having paid the special $50 occupational tax required from persons engaged in wagering, "on premises known as 1710 N. Wolfe Street, Baltimore, in the State and District of Maryland". The Information was based on Title 26 U.S.C. §§ 4401; 4411; 4412; 4901; 7203; 7262; 7272; Code of Federal Regulations Title 26, s. 325.50.

The cases were set for trial on January 4, 1961 and on the day before, the respective defendants in the two cases filed motions to suppress the evidence obtained by the Government with respect to the non-tax paid liquor, and separately with regard to the evidence as to wagering found in the premises 1710 N. Wolfe Street, Baltimore, Maryland. By agreement of counsel both cases were heard together, non-jury, and without prior offer or introduction of testimony by the defendants in support of the motions, the Government proceeded to submit its evidence on the substantial merits of the case, counsel for the defendants stating that they would challenge all of the Government's evidence as insufficient to warrant conviction on the ground that the Government evidence had been obtained by unlawful arrests, search and seizure.

The whole of the testimony has not been stenographically transcribed in toto but I have had much of it read by the court reporter and from my recollection of the evidence, exhibits and some trial notes, I find the following facts.

1. Shortly prior to August 3, 1960, two agents of the Alcohol Tax Unit received information from a reliable source that the premises 1710 N. Wolfe Street in East Baltimore, were being used for the retail sale of non-tax paid spirits (commonly called "moonshine") and that the supplies of the liquor for sale were customarily delivered at the rear of the premises. Acting on this information, on August 3, 1960 about 9:30 p. m., the two agents, Juppe and Hammond, were patrolling the neighborhood of 1710 N. Wolfe Street going southerly. When they arrived at the first intersection south of that block they noted an automobile conforming in general description to one which they had been suspecting in connection with illegal traffic, turning north from East Lanvale Street (the intersection referred to) into an alley in the rear of the 1700 block N. Wolfe Street. They also noted that the automobile seemed to have been heavily laden in the rear. Suspecting this particular automobile in connection with their investigation, they proceeded south on Wolfe Street to an adjoining cross street and then turned right and then north into the alley first referred to, and drove north in that alley until they came to a point about a block south of the automobile which they had seen turn north into the same alley from Lanvale Street. The pursued automobile had stopped in the alley in what they judged to be the rear entrance to 1710 N. Wolfe Street. They dimmed the lights of their car, stopped it and used high powered binoculars to observe anything that occurred with regard to the stopped automobile standing in the alley.

2. The Agents observed three Negroes in and about the car. One of them opened the trunk of the car and by the aid of a nearby electric light shining on the car, the Agents observed in the open trunk cartons or packages resembling in size and shape customary containers for moonshine or non-tax paid liquor. By virtue of their considerable number of years of experience in their specialized occupation, they thought at the time in connection with the information they had received from a reliable source, that

the automobile under observation contained a supply of non-tax paid liquor for the premises 1710 N. Wolfe Street. They saw one of the large cartons or packages lifted out of the car by one or two of the three men, one of whom disappeared to the right and another also disappeared temporarily from view. After waiting a short time the Agents observed that one of the two men who had previously disappeared, re-appeared and walked away from the place.

3. The Agents then drove their car up the alley to the car remaining there and found with it one of the three men first mentioned who was the defendant Wise. The Agents asked him if he was the driver of the car, to which he replied that he was, and they then stated that they were Federal Agents and said they wanted to see what was in the trunk of the car and asked him to open it, which he at once did without objection. Immediately in their view were several gallon jugs of the kind used for Coca Cola syrup but containing a whitish liquid which in appearance they thought to be moonshine liquor and quickly verified that on smell and taste on removal of the caps of one or more of the jugs. There was no evidence of stamps indicating the payment of taxes thereon. Immediately thereafter they notified the defendant Wise that he was under arrest and Agent Hammond proceeded through the rear yard (as to which by other evidence was enclosed by a wire fence) toward the rear of the house in the direction which the Agents had seen one of the two men who had previously disappeared, was proceeding.

4. When Agent Hammond got to the rear door he knocked on it, announced that he was a Federal Agent and almost at once heard a loud crashing noise like that of the breaking of glass bottles, and promptly thereafter the door was opened by the defendant Hines. Immediately Agent Hammond saw lying on the floor of the room the remnants of a large amount of broken glass and saw spilled fluid which, by smell, he identified as moonshine liquor and found no evidence of stamps indicating the payment of taxes thereon. In the meantime, Agent Juppe had told the defendant Wise to follow him and they both went into the rear room of 1710 N. Wolfe Street, Juppe having heard the crash of the broken glass on his way from the automobile to the door.

5. In addition to the defendant Hines who had opened the door for the Agents, they found also present Mrs. Bryant, the third defendant, and the Agents notified both of them that they were under arrest. After advising both of them and the defendant Wise in the usual way regarding their constitutional rights, they proceeded to ask them questions upon the subject. Wise said that he had been paid $10 to transport the liquor. Mrs. Bryant stated that she occupied the house; and with regard to the liquor she said that some days before she had ordered it for her personal use from a man referred to but not giving his name. She also added that Hines had nothing to do with the liquor. Hines stated that he was and had been for about a year merely a lodger in the house; that he rented a room on the second floor rear and that he knew nothing about the liquor and was merely sitting in the kitchen eating some crabs when he heard the Agents knock on the door and proceeded to open it. Later as a witness for himself at the trial of the case he in substance again stated what he had told the Agents and that all he knew about the liquor was that shortly before the Agents knocked on the door a man had come into the room with a large package which he set down and left without further explanation. He did not know who the man was but shortly thereafter the Agents came. The door which Hines opened was the door of the kitchen which was the rear room on the first floor, opening directly into the yard in the rear of 1710 N. Wolfe Street.

6. The Agents in customary course of investigation of this nature and resulting from preceding circumstances, naturally proceeded to further examine the premises in the quest for other non-tax paid liquor. In substance they found

none, but in the course of their examination of the premises they noted that Mrs. Bryant picked up from a table or similar place, a dozen or more brown envelopes which she placed in a more remote or less accessible place on a shelf over the basement steps. Looking at these envelopes the Agents found nearly all of them of the same general size, color and character but most of them having particular numbers. They also found in the kitchen or other rooms in the house, large wall calendars covering the period from about January 1959 into August of 1960, with figures and numbers for practically every day of that eighteen month period except Sundays. About the same time the Agents were joined by another Alcohol Tax Unit Agent, Mr. Hall, who participated further in the search of the premises and with other Agents, found still further pads and papers, blank memorandum pads in large quantities and other material which he suspected, as a result of previous investigations of a similar nature, indicated the conduct of a lottery or numbers business. He then called his Headquarters and requested that a special expert in such suspected lottery activities should come out and inspect what had been found and further conduct the investigation. Thereupon Agent Nizer of the Intelligence Division of the Treasury or Internal Revenue, appeared and as a witness, after stating his qualifications as an expert with regard to the numbers racket or business, explained in some detail what was the significance of the several papers, memoranda, pads, figures, etc., and that they were indicative of different phases of the lottery business such as representing numbers assigned to various runners, collectors, solicitors or others gathering bets or otherwise engaged in lottery activities. The Agents also found a locked closet under the stairs leading to the second floor, which Mrs. Bryant voluntarily unlocked for them, and in this closet, containing some of her clothing, were also two boxes, one a red box containing papers and currency and a locked gray box, which Mrs. Bryant unlocked, containing currency in the amount of over $400.

7. Upon questioning by the Agent, Mrs. Bryant stated that the various papers, calendars, figures and documents found by the Agents were those incidental to the conduct of a lottery business and that she had been engaged in that business at that place for a year or more previously. She also said that she did not know that it was legally necessary for her to register with the Director of Internal Revenue for the District nor did she know that it was necessary for her to have applied for and purchased a $50 special stamp.

There was further evidence from the files of the local Director's office that Mrs. Bryant had never registered her business there nor had she ever applied for and obtained the $50 occupational stamp.

The only evidence offered by the defendants was that of the defendant Hines which has been substantially above stated.

In this case the principal contention of the defendants on the motion to suppress evidence and on the whole of the evidence on behalf of the Government, including the testimony of the defendant Hines, is that the Federal Agent Juppe did not have proper authority to arrest the defendant Wise at the time the arrest was made; and that all the testimony of the Agents as to subsequent events is insufficient under constitutional principles to justify conviction of any of the defendants.

I conclude that the evidence of the Government as a whole showed that there was probable cause for the arrest by Juppe of the defendant Wise and that the subsequent discoveries by the Agents of the non-tax paid liquor and the wagering documentary evidence was the result of a reasonable search without a warrant therefor.

■■ There is no uncertainty as to what is the law applicable to the arrest by Juppe of the defendant Wise at the time and place and under the circum-

stances above recited. In the absence of a clearly applicable federal statute regarding arrest, it is well established that the validity of an arrest depends upon the law of the State where the arrest is made by Federal Agents. In the instant case my attention has not been called to any federal laws directly applicable to the particular situation and therefore the Maryland substantive law applies. In United States v. DiRe, 332 U.S. 581 and footnote 8, at page 589, 68 S.Ct. 222, at page 226, 92 L.Ed. 210, it was so held, it being pointed out in the footnote that in one of the Acts passed by the First Congress (ch. 20, s. 33, 1 Stat. 91, Sept. 1789) it was provided that arrests in particular States should be "agreeably to the usual mode of process against offenders in such State".

■■ The Maryland law of arrest, substantially the same as the long prevailing common law, is that an officer having authority to make arrests may arrest without a warrant an individual for a misdemeanor committed in his sight and may arrest for a felony not committed in his presence but where he has information and corroborating circumstances showing probable cause for the arrest. Md.Law Ency. Vol. II, Arrest, § 4, and cases cited therein; Edwards v. State, 196 Md. 233, 76 A.2d 132. In this case the arrest of Wise at the time it was actually made, clearly showed probable cause. The presence of the Federal Agents at the time and place was in consequence of reliable information they had received and the corroborating facts were what they personally observed while watching the automobile from a distance through binoculars and after the trunk of the car was opened by Wise, from personal observation from sight, smell and appearance of the non-tax paid liquor. It must be remembered that they were dealing with an automobile, not a fixed, but a very mobile object. In an early case I dealt with a similar situation in this court in United States v. Murray, D.C.1931, 51 F.2d 516, where the controlling authority at that time was the cases of Carroll v. United

States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 241, 75 L.Ed. 629. In the latter case the Supreme Court by Mr. Justice Stone (later Chief Justice) said:

"The Fourth Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; *and arrest for the transportation or possession need not precede the search.* * * * To show probable cause it is not necessary that the arresting officer should have had before him legal evidence of the suspected illegal act. (Citations omitted.) It is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched." (Italics supplied.)

As applied to non-tax paid liquor in automobiles, this principle with respect to the validity of arrests has been followed and applied in this court and in the Court of Appeals for the Fourth Circuit in many subsequent cases. See, for instance, Janney v. United States, 4 Cir., 206 F.2d 601; United States v. Hayden, D.C.Md., 140 F.Supp. 429, Judge Watkins.

■ What constitutes probable cause depends upon the particular facts and circumstances of each case; but the principle to be applied in determining whether it exists or not with respect to a moving vehicle, as long ago announced in the Carroll and Husty cases, supra, has, I think, not been departed from by the Supreme Court; and I find in several of the very recent cases further amplification of the same principle. Thus in Jones v. United States, 362 U.S. 257, at page 269, 80 S.Ct. 725, at page 735, 4 L.Ed.2d 697, it was said: "In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon in-

formation received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. Draper v. United States, 358 U.S. 307, 308, 79 S.Ct. 329, 3 L.Ed.2d 327."

And in Henry v. United States, 361 U.S. 98, at page 102, 80 S.Ct. 168, at page 171, 4 L.Ed.2d 134, it was said: "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." Counsel for the defendant seeks to support his contention in this case by reference to the result in the Henry case just cited, where the conclusion was that the arresting officer did not have probable cause at the precise time of the particular arrest relied on by the Government; but it will be found that the facts at that time known to the officer were much less convincing than in the instant case.

■ It is suggested by counsel for the defendant that the request of the Agents to Wise to open the trunk of the car should be regarded as an arbitrary and unauthorized demand and therefore his compliance should not be regarded as voluntary; but the facts as recited based on the testimony of Juppe do not warrant this inference, and indeed under the principle of Carroll and Husty, supra, and consistent with the later cases applying the test as to probable cause, it was not unreasonable for the officers to say to Wise that they wanted to know what he was carrying and to ask him to open the trunk, and on the applicable principle of the tests it seems that they would have been warranted in themselves opening the trunk of the car at the time. When opened it was apparent to their sense of sight and smell that non-tax paid liquor was being transported in the automobile.

■ With regard to the further discovery of some of the non-tax paid liquor in the kitchen of the house, the facts recited also show there was reasonable cause for the action of the officers. They had seen one or more of the packages of a similar nature taken from the car and as they reasonably thought, probably taken into the house and they had definitely ascertained that the remaining liquor in the car was non-tax paid. On arriving at and knocking on the rear door of the house they announced that they were Federal Agents and almost simultaneously heard the sound of breaking glass, and when the door was opened voluntarily by Hines there was immediately in their sight the results of the breaking of glass and spilling of liquid on the floor of the kitchen which, to their sight and smell and absence of tax stamps, clearly indicated non-tax paid liquor. Immediately present at the time was Hannah Bryant who stated that she was the occupant of the house and subsequently, after proper notice regarding her constitutional privilege, freely admitted that she had ordered the liquor for her personal use. She was then put under arrest by the officers on account of the liquor being on the premises.

■ With respect to the further discovery of lottery documentary evidence during the incidental search of the house for more contraband liquor, that constituted an incident of the original arrest of Mrs. Bryant with respect to the liquor. Counsel for the defendant does not contend that that further discovery was the result of an unlawful search if the original arrest was proper.

My conclusion is that the motions to suppress the evidence should be and are now *overruled* this 17th day of January, 1961.