## JANNEY v. UNITED STATES.
### No. 6620.

United States Court of Appeals
Fourth Circuit.

Argued June 11, 1953.

Decided July 23, 1953.

602

T. Barton Harrington and R. Palmer Ingram, Baltimore, Md., for appellant.

Thomas G. Gray, Asst. U. S. Atty., Baltimore, Md. (Bernard J. Flynn, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The question in this case is whether the actions of government agents in securing evidence which led to the conviction of Brown Janney of the unlawful possession of untaxed distilled spirits constituted a violation of the Fourth Amendment to the Constitution of the United States.

A criminal information was filed against Janney charging that on December 21, 1952, near Rising Sun, Maryland, in violation of 26 U.S.C.A. § 2803 of the United States Revenue Code, he had in his possession 95 gallons of whiskey in containers which did not bear stamps showing the quantity of the distilled spirits therein, or the payment of internal revenue taxes thereon. At the outset of the trial the defendant waived the filing of an indictment, pleaded not guilty, consented to a trial before the judge without a jury, and filed a motion that the whiskey, which had been seized by the internal revenue agents of the United States at his farm in the vicinity of Rising Sun, be returned to him and that it be suppressed as evidence in the trial of the case on the ground that the officers entered upon his premises and seized the liquor without a search warrant in violation of the Fourth Amendment. Evidence with respect to the seizure was taken and the judge being of the opinion that the seizure was lawful, overruled the motion. The case was then submitted to the judge on the merits and the defendant was convicted on evidence sufficient to sustain a verdict of guilty. and having been twice before convicted of similar offenses, was sentenced to serve three years in prison and to pay a fine of $1,000. On this appeal the defendant asked that the judgment be reversed on the ground that the court erred in overruling the motion to suppress the evidence in view of the manner now to be described in which the seizure took place.

Janney maintains a 30 acre farm near Rising Sun, Maryland. The residence stands a few feet above and very close to the south side of a public highway. To the west of the house, standing further back from the highway, are a number of outbuildings of the farm. These buildings are situated on the east side of a wire fence which runs northerly from the highway about 100 feet west of the house. Still further to the west outside of but near to the fence in an open field stands a small dilapidated and unused hog pen. Between the house and the wire fence a private road runs from the highway into the yard in front of the outbuildings.

On December 21, 1952 certain internal revenue agents, who were acquainted with Janney's previous criminal record, determined to act upon certain information which led them to suspect that Janney was violating the federal liquor laws at his farm. Accordingly they arranged with one Charles Torain, a colored man, to drive to the farm in a government car and to buy some whiskey from Janney. At or about 7:30 P.M. three agents stationed themselves in automobiles in the vicinity and agent Muller, who played the chief part in the seizure, went to the scene of the crime on foot by entering a field one-half mile from the buildings. Proceeding thence through a corn field and swamp land he reached the hog pen and crouched beside it outside the fence to await developments. From his

point of observation the back door and porch of the house, over which a light was burning, were in clear view. At the time he was in communication by handy-talkie radio with the other agents stationed nearby.

At 7:40 P.M. a Chevrolet car entered the driveway from the public road and Muller saw a colored man, who proved to be Torain, get out of the car and go to the back door of the house and knock on the door. In a little while he was .admitted to the house and ten minutes later he came out with Janney, who carried a flashlight. Janney got into a Ford car that was parked in the yard, and moved it out of the way so that Torain could turn his car and back it up to the entrance of a barn. Inside the barn the agent could see a pick-up truck in which were visible to him a number of cases, such as are customarily used in the illicit liquor trade to pack one-half gallon fruit jars containing distilled spirits. The agent had already observed these cases by means of the light of passing automobiles which, on account of a curve in the road, shone directly into the barn as the cars passed on the highway. The distance from the hog pen to the truck loaded with the cartons was not over 35 feet. One of the two men at the barn carried one of the cartons to Torain's automobile and placed it in the rear compartment, and as he did so the agent heard the tinkle of glass jars such as he was accustomed to hear in moving similar articles at illicit stills. Muller was convinced by what he knew of 'Janney's record and what he was observing that a violation of the liquor laws was taking place and accordingly he pushed through the fence and went to the back of the car that was being loaded and looking into the car was able to smell the odor of distilled spirits. The colored man ran away but Janney was arrested and the other agents in the meantime having arrived at the farm, cartons containing 95 gallons of whiskey were seized.

■ The rule to be followed in the pending case in determining whether or not the search and seizure were valid and whether the evidence was properly admitted in the criminal prosecution is set out as follows in United States v. Rabinowitz, 339 U.S. 56, 65, 70 S.Ct. 430, 435, 94 L.Ed. 653:

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

■ We bear in mind that the protection of the Amendment extends not only to the dwelling house of a defendant but also to the structures used by him in connection with his home or his place of business. Wakkuri v. United States, 6 Cir., 67 F.2d 844; Roberson v. United States, 6 Cir., 165 F.2d 752; Temperani v. United States, 9 Cir., 299 F. 365.

■ The Amendment, however, is specifically limited to the right of the people

to be secure in their "persons, houses, papers, and effects" against unreasonable searches and seizures, and it does not extend to open fields, as was held in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, where revenue agents approached the defendant's dwelling house over his land, observed from a distance certain actions which led them to believe that he was in possession of illicit liquor, and later verified their belief by an examination of certain containers of liquor on the place. The fact that the officers were trespassers on the defendant's property was thought to be immaterial.

██ In that case the seizure was made without search warrant in connection with an arrest of the defendant without warrant for violation of the internal revenue laws and the evidence was held to be admissible. In the instant case likewise the seizure was made as an incident to an arrest without warrant and the legality of the arrest is beyond question since the facts within the knowledge of the arresting officer and the actions of the defendant within his view abundantly justified the belief that a crime of the grade of felony was being committed in his presence. The agent was acquainted with the fact that the defendant had been engaged in the business of dealing in illicit liquor in the past, and he also knew that Torain had been instructed to go to the farm and make a purchase of whiskey from the defendant. With this knowledge in mind and without any previous attempt to make a search he observed the familiar cartons in the barn which indicated the possession of illicit goods, and he also witnessed the conference between the defendant and Torain and the transfer of the goods to the latter's car. The agent did not know at the time that the cartons contained fruit jars full of illicit liquor, but it is obvious that he had probable cause to believe that a felony had been committed, and hence the arrest without a warrant was valid under the Maryland law, which is said to be controlling in a case of this kind. See Edwards v. State, 196 Md. 233, 76 A.2d 132; United States v. DiRe, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210; 18 U.S.C.A. § 1; 26 U.S.C.A. § 2803; 18 U.S.C.A. § 3041.

The seizure was therefore lawful as an incident to a lawful arrest; and the attendant circumstances under which the goods were found and taken possession of by the revenue officers further support the reasonableness of the seizure. There was no search of the defendant's dwelling house. There was no forced entry into or search of the outbuildings, but merely the taking from the defendant's open automobile of the cartons of liquor which the agent had already seen and which lay ready to hand. Substantially the whole transaction took place out of doors in the defendant's yard and no articles were discovered or seized which the agent had not already seen from afar. Cf. Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420.

It may be added, although the legality of a search does not depend upon the practicability of obtaining a search warrant in advance, that the agents in this case did not have certain knowledge in advance of the arrest that the defendant had illicit liquor in his possession, but did have reason to fear that the goods would not remain in the defendant's possession, if they postponed the seizure until a search warrant could be obtained.

Affirmed.