**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Roy L. CAPPS, Defendant-Appellee.**

**No. 25697.**

United States Court of Appeals,
Ninth Circuit.

Nov. 24, 1970.

Rehearing Denied Feb. 18, 1971.

Charles Pinnell (argued), Asst. U. S. Atty., Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellant.

Brian L. Comstock (argued), Seattle, Wash., for defendant-appellee.

Before JERTBERG, BROWNING and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The government appeals from the district court's order suppressing the use

of a machine gun as evidence in the prosecution of appellee for the unlawful possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).[1] The jurisdiction of this court to review the granting of the motion to suppress is conferred by 18 U.S.C. § 3731.

On October 14, 1969, Agent Dale Chorpenning, a special investigator of the Alcohol, Tobacco and Firearms Division of the Treasury Department, obtained a search warrant for a certain green 1968 Pontiac Firebird. The affidavit in support of the warrant stated that the car contained a .45 caliber machine gun in a red bowling bag located in the trunk. The affidavit further stated that appellee had represented to an informant that the weapon belonged to appellee.

Since the location of the suspect vehicle was unknown, a party of five federal agents and two detectives from the Auburn Police Department split into three groups and began patrolling the Auburn and Sumner, Washington, areas looking for the Pontiac. About 4:30 p. m. Agent Donald Madsen spotted appellee riding as a passenger in a 1962 Oldsmobile heading toward the residence of co-defendant Gerald Elkins.[2] The Oldsmobile was observed by Agent Madsen in the driveway at Elkins' house a short while later. Within a couple of hours, the three patrol vehicles assembled and proceeded toward the Elkins' place. They turned off the main road and traveled along a narrow driveway leading up to the side of the house. The vehicles stopped somewhat to the side and rear of the house and directly behind the Oldsmobile and the Pontiac for which they had been searching. Prior to their

entry upon the Elkins' property the officers had not known that the Pontiac was there. The Pontiac and the Oldsmobile were parked about five feet apart and between the house and a small cottage at a distance of approximately forty feet from the house.

The officers departed from their vehicles. Agent Chorpenning and at least one other agent went up to the house and knocked on the front door whereupon they were subsequently granted admittance by Elkins. Outside, Agent Madsen stationed himself near the small cottage and then knocked on the door. There were no signs of activity inside. Madsen eventually walked over to the two vehicles and observed a red bag on the rear seat of the Oldsmobile. Madsen told two other agents of his discovery and one of them tried the doors of the Oldsmobile but found them to be locked.

Inside the Elkins' residence, appellee, who was present with his family, was informed that the officers had a warrant to search his car.[3] Agent Chorpenning and appellee proceeded out the back door of the house to search the Pontiac. Once outside Chorpenning was informed that a red bag had been observed in the Oldsmobile and that the doors were locked. Chorpenning insisted that the Pontiac be searched first since it was the vehicle described in the warrant. The search of the Pontiac was concluded in a few minutes without uncovering either a red bag or a machine gun.

After the fruitless search of the Pontiac, Elkins was informed by Chorpenning that they had probable cause to search the Oldsmobile and asked to furnish the keys to assist them. Elkins finally did produce the keys, but not vol-

1. Section 5861(d) provides:
   "It shall be unlawful for any person—
   \*       \*       \*       \*       \*
   "(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

2. The charges against Elkins have been dismissed.

3. At the hearing on the motion to suppress and in his brief herein, appellee hints that the search warrant for the Pontiac was really a pretext to make a search of the house. We agree with the district judge that the evidence does not show a search of the house. R.T. 74. Furthermore, even if there had been such a search, the seizure of the red bag from the Oldsmobile was clearly not the fruit of that activity.

untarily. The Oldsmobile was unlocked and the red bag removed from the back seat. Inside the bag the officers found the unregistered machine gun.

On appellee's motion to suppress, the district judge held that the red bag in the Oldsmobile was discovered during a prior illegal search of the curtilage area of the house, and not incident to the warrant search of the Pontiac. We reverse.

▮ Appellee contends that even the entry upon the Elkins' premises was improper because the officers did not have a warrant for the Oldsmobile and lacked probable cause to believe that the Pontiac was located on the property. This contention is without merit. Even assuming that the law enforcement officers were both trespassing[4] and lacking in probable cause when they turned off the public road onto Elkins' private driveway, it is a concession of no benefit to appellee. The Fourth Amendment's protections do not extend to the "open field" area surrounding a dwelling and the immediately adjacent curtilage, and therefore, information gained as a result of a civil trespass on an "open field" area is not constitutionally tainted, nor is the search and seizure which ultimately results from acquiring that information. Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Wattenburg v. United States, 388 F.2d 853, 856 (9th Cir. 1968); McDowell v. United States, 383 F.2d 599, 603 (8th Cir. 1967); Giacona v. United States, 257 F.2d 450, 456 (5th

Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958); Koth v. United States, 16 F.2d 59, 61 (9th Cir. 1926). Consequently, the fact that the agents first learned, after they entered upon Elkins' premises, that the Pontiac was located thereon, was not information improperly obtained.

▮ Being lawfully on the property, and observing that the Pontiac was parked between the house and cottage, the agents were entitled to proceed to the car and conduct a search of it. Although appellee has standing to challenge the search on Elkins' property as one against whom the search was directed, Alderman v. United States, 394 U.S. 165, 173, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968); Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the fact that the Pontiac was located on the "curtilage"[5] to Elkins' house did not create a special sanctuary for appellee wherein his right to privacy was any greater than that which would have existed at his own dwelling. If the vehicle had been located on the curtilage of appellee's residence he could not have objected to a search of it on the ground that it was resting within an area protected by the Fourth Amendment. By securing a valid warrant to search the Pontiac, a detached magistrate determined that there was probable cause to pierce that protective shield.

▮ Upon entering the curtilage area, the conduct of the law enforcement officers, to the extent that it exceeded a mere search of the Pontiac, must be

---

4. This is an assumption that is not supportable by the authorities.

   "When the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable." Giacona v. United States, 257 F.2d 450, 456 (5th Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). *Accord,* United States v. Sterling, 369 F.2d 799, 803 (3rd Cir. 1966); Foster v. United States, 296 F.2d 65 (5th Cir. 1962). Having good reason to believe that appellee might be on the premises, the prudent performance of their duties

required that the officers approach the house; request to speak to appellee; inform him of the outstanding warrant for his car; and ask him to disclose the whereabouts of the Pontiac.

5. The district judge found that the area containing the small cottage and the two automobiles was a part of the "curtilage" area immediately adjacent to Elkins' house and thus protected by the Fourth Amendment. We do not quarrel with that finding. *See* Wattenburg v. United States, 388 F.2d 853, 857 (9th Cir. 1968).

measured by constitutional standards. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * * *'" This court has emphasized that the purpose of the Fourth Amendment "means that every search must be examined in the light of the Amendment's requirement that it not be 'unreasonable.'" Henderson v. United States, 390 F.2d 805, 807 (9th Cir. 1967). "Reasonableness" is a weighty determination to be made by the district court in the first instance, but it is not binding on this court. Huguez v. United States, 406 F.2d 366, 375 (9th Cir. 1968); Blackford v. United States, 247 F.2d 745, 751 (9th Cir. 1957).

We are compelled by the circumstances of this case to reach a different constitutional conclusion from that of the trial judge concerning the reasonableness of the "prior search" of the curtilage area. Upon entering the area between the house and the cottage, the agents had to exercise a great deal of caution in light of the knowledge they possessed. They had a warrant to search a car for an extremely dangerous weapon—a machine gun. It was reasonable for the agents to conclude that a person who would harbor such a weapon in his car should be considered potentially dangerous also. The car was unoccupied, and the nearby cottage could have contained appellee.[6] A failure to check the cottage for occupants would have entailed an unreasonable risk of harm to the agents. Furthermore, if appellee was inside the cottage, he was entitled to be informed that the officers had a warrant to search his car.

The cottage was checked but no entry was made. The record only shows that there was a knock at the door, and most probably a visual examination from the outside for signs of life. In the circumstances, this was not an unreasonable search of the cottage.

█ The initial viewing of the red bag on the back seat of the Oldsmobile did not constitute a "search." The agents were lawfully on the premises. They had a right to be in the area immediately surrounding the object of their warrant, the Pontiac. The Oldsmobile was parked only five feet from the Pontiac. "[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence. [Citations omitted]." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). *Accord* Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 623, 10 L. Ed.2d 726 (1963); Gilbert v. United States, 366 F.2d 923, 932 (9th Cir. 1966), cert. denied, 393 U.S. 985, 89 S. Ct. 460, 21 L.Ed.2d 446 (1968). Whether or not the red bag was observed before or subsequent to the initial examination of the Pontiac is unimportant. The police are not expected to follow, sequentially, like actors in preparation for a play, predetermined stage markings and scripts as they approach the object of the search warrant and conduct the search. Nor are they expected to wear blinders while they execute a search warrant. The only question before this court is whether they had a right to be in a position to observe the red bag in plain view.[7] We hold that they did.

---

6. The cottage was, in fact, being used by appellee and his family as guests at the Elkins' residence.

7. This court has recently said that, in addition to deciding whether the officer had a right to be in a position to have the plain view, it "must also determine whether the looking and listening carried on was 'an intrusion upon what the resident seeks to preserve as private.'"

Ponce v. Craven, 409 F.2d 621, 625 (9th Cir. 1969), cert. denied, 397 U.S. 1012, 90 S.Ct. 1241, 25 .L.Ed.2d 424 (1970), quoting from Wattenburg v. United States, 388 F.2d 853, 857 (9th Cir. 1968). This case is distinguishable. In both *Ponce* and *Wattenburg*, as well as Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), on which those two cases rely, the officers were not acting pursuant to a search warrant. Here, a

After the search of the Pontiac failed to produce a red bag or a machine gun, the law enforcement officers clearly had probable cause to search the Oldsmobile. They had information from a reliable informant that appellee had represented that a machine gun contained in a red bowling bag belonged to him. Appellee had been observed riding as a passenger in the Oldsmobile earlier in the day. Appellee was present at the house where the Oldsmobile was parked. A red bag was not found after a thorough search of the Pontiac. A red bag matching the description in the warrant was in plain view on the back seat of the Oldsmobile. The Oldsmobile was parked only five feet from the suspect Pontiac.

Since there was no warrant for the Oldsmobile and no arrest to which a warrantless search and seizure might be incident, the search of the Oldsmobile and the seizure of the red bag could only be validated if necessitated by exigent circumstances. Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970); Gilbert v. United States, *supra*, 366 F.2d at 932; Cipres v. United States, 343 F.2d 95, 98 n. 9 (9th Cir. 1965), cert. denied, 385 U.S. 826, 87 S. Ct. 58, 17 L.Ed.2d 62 (1966). Those circumstances obviously existed in this situation. The object to be seized was an extremely dangerous weapon. It was located in a movable target for the search. Neither appellee nor Elkins was under arrest, and they were both alerted to what the officers were seeking.

In Chambers, *supra*, The Supreme Court noted that "there is a constitutional difference between houses and cars" even when a vehicle is no longer on the highway. 399 U.S. at 52, 90 S. Ct. at 1982. The Court found "no difference between on the one hand seizing and holding a car before presenting the

probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." The circumstances here were even more exigent than those which justified ·the warrantless search in *Chambers*. There, the occupants of the car had been arrested and the car had been driven to the station house.

The order of the district court granting the motion to suppress is reversed.

disinterested magistrate authorized an intrusion upon appellee's privacy whereever his car might be located.

Moreover, even under the rationale of *Ponce*, a reliance on privacy must be *reasonable*. Appellee's reliance on the privacy of the back seat of Elkins' automobile as a place to store a bag containing a machine gun was not reasonable. The use and destination of the Oldsmobile were factors over which appellee had little control, and the opportunities for unintentional exposure of the weapon were quite large.