**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Charles Eddie EVANS, Defendant-
Appellee.**

**No. 71-2957.**

United States Court of Appeals,
Ninth Circuit.

June 21, 1973.

Rehearing Denied Aug. 1, 1973.

Bruce Babcock, Jr., Asst. U. S. Atty. (argued), Dwayne Keyes, U. S. Atty., Richard W. Nichols, Asst. U. S. Atty., Sacramento, Cal., for plaintiff-appellant.

Charles H. Wright (argued), Sacramento, Cal., for defendant-appellee.

Before LUMBARD,* HUFSTEDLER and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Evans was charged with violations of 26 U.S.C. § 5861, subsections (c) (possession of a firearm without payment of making tax), (d) (possession of an unregistered firearm), (h) (possession of a firearm with the serial number removed), and (i) (possession of a firearm not identified by a serial number). The firearm involved in each count was a sawed-off shotgun. The district court granted Evans' motion to suppress the firearm. We reverse.

The government first contends that there was a proper consent for the search and, second, that there was probable cause for the search under circumstances not requiring the securing of a search warrant. As we concur with the second contention, it is unnecessary for us to reach the consent issue.

Two days before the search in question, the Sacramento police department received a telephone call from an unidentified female who reported that her husband had been importuned by a man named "Chuck" or "Charlie," whom she described, to assist him in a safe-burglary. She related that this person was a safecracker who had been in San Quentin, that he had a 1964 white Buick Electra and that he carried his safe-burglary tools in its trunk in a green footlocker. She reported he possibly had outstanding charges pending against him, one local and one in Lodi, California. She expressed the fear that her husband might be arrested or injured.

That afternoon, a second call was received from the informant stating she

---

* Honorable J. Edward Lumbard, Senior United States Circuit Judge of the Second Circuit, sitting by designation.

had again seen the green footlocker. She again described the vehicle and the person involved and supplied his approximate address on Princeton Street. On the next day, the police located the Princeton Street residence and talked to the landlord who identified the occupants of the house as Frank Kane and his daughter Faye.

At 3:00 a. m. on the day of the search, a 1963 (rather than 1964) white Buick Electra was seen in the Kane driveway. The Department of Motor Vehicles reported the car as registered to Faye Kane.

Late that morning, the identity of the suspect was established as Evans, a boyfriend of Faye. The Division of Criminal Identification and Investigation was contacted and reported that Evans was suspected of being an active burglar but that there were no pending requests to hold him.

The informant called again that afternoon and reported that her husband had just returned from where "Chuck" was staying. She said that the green footlocker had been transferred to the Buick. She indicated her husband was listening to her and might go immediately to warn "Chuck." The police assembled and proceeded to the Kane residence where Evans was arrested on a long-standing traffic warrant from Mojave, California. It is not contended that this search was incident to that arrest.

Evans disclaimed any interest in the home or car and advised the police that they were Faye's. Faye agreed the car was hers. The police stated they desired to search the house and the car which was then in the driveway. Evans advised Faye she need not allow a search. Faye asked, "Well, what if I don't allow you to search the house?"; an officer replied that it would be necessary to obtain a search warrant. Faye then said, "Oh, go ahead and search."

The car keys had already been obtained from a nightstand in the bedroom. While the car was being searched, Evans was handcuffed and in a police car. Upon opening the trunk, a green footlocker with a broken lock was discovered. The footlocker was opened and the sawed-off shotgun found. Subsequently, a vehicle approached and an occupant apparently waved at Evans, who was then in the police car, and then drove off.

The government asserts that this seizure and search were legal; Evans obviously disagrees. For the reasons which follow, we agree with the government. The motion to suppress should not have been granted.

██ Evans argues that the police should have obtained a search warrant before going to the Kane residence. In an interesting switch, a defendant is contending that the police had probable cause while they are arguing that they did not. The tip of an untested, unreliable informant is not sufficient for probable cause. The two-prong test requires a showing of personal knowledge of the underlying circumstances (as distinguished from suspicion, belief, or mere conclusion) and a showing of reliability. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The test may be demonstrated by corroborating facts, but they must be sufficient to raise the reliability to constitutional standards. *See* Spinelli v. United States, 393 U.S. 410, 417–418, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

██ Evans contends that the standard was met prior to the police's departure for the Kane residence and that their failure to secure a search warrant requires affirmance. Even if we agree that the police had probable cause before their departure, we do not believe that this would aid Evans in this case. Given the informant's message of a possible warning to Evans, the failure to delay the police investigation to secure a search warrant was not unreasonable.

The district judge did not make a precise finding that there were no exigent circumstances. He did state that:

Now, this simply is not a case where it was not practicable to secure a warrant. They had time before they went

down, and they had time to send an officer downtown to obtain a warrant and come back. They knew the exact location and description well in advance, when they intended to seize it. . . . This was not property within his immediate reach. This is property elsewhere. The car wasn't going anywhere. Where's he going to go. They could follow him; they could find the car.

The district judge's opinion also indicates that he believed the police's claim that they were told by their informant that her (the informant's) husband, who was said to be Evans' confederate, was likely to warn Evans that the police would soon be upon him. In light of this fact, we believe that the police were justifiably concerned lest Evans or his confederate destroy or abscond with the evidence about which they had been told by their informant.

> This court has emphasized that the purpose of the Fourth Amendment "means that every search must be examined in the light of the Amendment's requirement that it not be 'unreasonable.'" (Citation omitted.) "Reasonableness" is a weighty determination to be made by the district court in the first instance, but it is not binding on this court. (Citations omitted.)

United States v. Capps, 435 F.2d 637, 641 (9th Cir. 1970). Under the circumstances of this case, we are compelled to reach a different conclusion from the district judge. We hold that, to the extent that he may have held that these facts do not constitute exigent circumstances sufficient to excuse the obtaining of a warrant, the district judge was in error. Here we are dealing with contraband, with the distinct possibility of an alerted criminal absconding with the evidence, and with the likelihood that a confederate might move the evidence which was located in an automobile. *Compare* Coolidge v. New Hampshire, 403 U.S. 443, 462, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), where it is stated that the object of the search there was

not contraband, that there was no alerted criminal who might leave with the car, and that there were no confederates who might momentarily move the evidence. *See also* United States v. Pollard, 466 F.2d 1 (10th Cir. 1972).

Evans next contends that, once the footlocker was discovered in the trunk of Faye's car, the police should have stood guard over the footlocker and/or the car while one of them attempted to obtain a search warrant to search the footlocker. The district judge, understandably, made no decision as to whether there were exigent circumstances at this point. Given probable cause, the exigencies of the search of the car were the same as the search of the footlocker. In the course of this initial intrusion, the footlocker came into the plain view of the officers. This green footlocker was already described by the informant. The government argues that the seizure and search could be upheld on the basis of probable cause and exigent circumstances. There was probable cause to search the car and to look in the footlocker at the time of the seizure. But this is not enough to justify the search. Coolidge v. New Hampshire, *supra*, 403 U.S. at 473–484, 91 S.Ct. 2022. *See* United States v. Cohn, 472 F.2d 290 (9th Cir. 1973). Whether the exigencies of the situation were sufficient to allow a warrantless search depends upon the totality of the circumstances.

The parties are concerned with the applicability of Coolidge v. New Hampshire, *supra*. However, we also note that the Court there found that "there was no 'exigent circumstance' to justify [the police's] failure to obtain a warrant" because "the police knew of the presence of the automobile and planned all along to seize it." 403 U.S. at 478, 91 S.Ct. at 2044. Of interest is that the Court noted that the car was not being used for an illegal purpose, that the opportunity to search was hardly fleeting, and that the objects sought "were neither stolen nor contraband nor dangerous." 403 U.S. at 460, 91 S.Ct. at 2035.

Consequently the exigencies of *Coolidge* differ significantly from those in this case, and the solution here must turn on these unique facts.

A warrantless search, albeit with probable cause, of a vehicle may be valid while a similar search in a home may be impermissible. *See* Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925). The basis of this distinction is the practical fact that evidence may more easily disappear during the time necessary to secure a warrant. The Supreme Court has recognized that there is ". . . a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U.S. at 153, 45 S.Ct. at 285. *See also,* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L. Ed. 151 (1938); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931). Here, we are confronted not only with the mobility of a vehicle, but also with the fact that a footlocker can be removed, carried or transported with greater ease and in a more devious and less detectable manner than a vehicle.

That Evans was handcuffed is not a total answer to the question. The police could reasonably conclude Evans would have a reasonable bail set for a traffic offense and would be free in a short time. Further, the police could reasonably believe the evidence might evaporate through the efforts of Evans' girlfriend who owned and had a right to immediate possession of the vehicle and who could be considered as hostile. Based upon the warning by the informant that her husband might try to aid Evans, the police could properly anticipate a confederate might attempt to interfere with the efforts to secure the evidence. These

facts make the reasoning of *Carroll* even more applicable to this case and illustrate the differences from *Coolidge*. *See* United States v. Ellison, 469 F.2d 413 (9th Cir. 1972); United States v. Ellis, 461 F.2d 962, 966–967 (2d Cir. 1972).

The proper test was succinctly stated by the Supreme Court in *Chambers:*

> Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment. 399 U.S. at 51–52, 90 S.Ct. at 1981.

Here the police might have seized the car pending a magistrate's determination. This would have been the lesser intrusion upon Evans' rights, but it would have been the greater intrusion upon the rights of Miss Kane, the owner of the car. On the other hand, it is easy to say that the footlocker could be confiscated by the police and taken to the magistrate, but a seizing would then have already occurred—a substantial interference. Standing guard still represents the same interference with property rights as well as an unnecessary use of law enforcement personnel. Under these circumstances, either course might be reasonable under the Fourth Amendment, but the immediate search was preferable. Given probable cause, we hold that the necessary exigent circumstances were present for a warrantless search.

This reasoning is not without precedent. In United States v. Capps, *supra,* we were confronted with a similar situation. The police were looking for a red bowling bag which they believed contained a machine gun. During the course of a legal search, the bag came into plain view. We neither required it to be seized and brought before the magistrate, nor staked out while a warrant was secured. We follow the same course here.

Reversed and remanded.

HUFSTEDLER, Circuit Judge (dissenting):

The tips of the untested citizen informant, coupled with corroborating circumstances, adequately supplied probable cause to justify the search of the Buick. *(E. g.,* Buelna-Mendoza v. United States (9th Cir. 1971) 435 F.2d 1386; *cf.* Draper v. United States (1959) 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; United States v. Acosta (5th Cir. 1969) 411 F. 2d 627.) The question whether exigent circumstances justified the failure to get a warrant is a close one. The district court found against the Government on this point, and that finding is not clearly erroneous.

However, if exigent circumstances had existed when the police were on their way to the Kane residence, they vanished before the Buick was opened and the footlocker was searched. By that time Evans was in custody on the outstanding traffic violation. Kane's Buick was parked in the driveway, and Kane herself was not implicated in any criminal activity. Kane did not consent to a search, as the district court found on ample evidence. The majority's conclusion that exigencies still existed is based at best on tenuous inferences that are not supported by the evidence. But even if the inferences were permissible, it was the district court's task to draw them; we are not at liberty to overturn the district court's findings on the basis of inferences that the law does not compel.

All that is involved in this case is the mild inconvenience of staking out a vehicle while awaiting a warrant, or, taking the majority's alternative, the even milder inconvenience of staking out a footlocker.

Chambers v. Maroney (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, will not carry the majority opinion. Unlike *Chambers* and like Coolidge v. New Hampshire (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, the Kane automobile was parked in a private driveway. An opportunity to search either the car or the footlocker was hardly "fleeting" (403 U.S. at 460, 91 S.Ct. 2022), and it was not impracticable to obtain a warrant (403 U.S. at 462, 91 S.Ct. 2022). *Accord,* United States v. Payne (9th Cir. 1970) 429 F.2d 169, cited with approval in *Coolidge, supra,* 403 U.S. at 462 n. 19, 91 S.Ct. 2022.*

I would affirm.

---

* United States v. Capps (9th Cir. 1970) 435 F.2d 637 does not support the majority. In *Capps,* Treasury agents had a warrant to search a Pontiac containing a machine gun located in a red bowling bag. The described Pontiac and an Oldsmobile were found parked together. The search of the Pontiac yielded nothing. The agents saw the red bowling bag in plain view on the rear seat of the adjacent Oldsmobile. We upheld the search under the exigent circumstances doctrine: "The object to be seized was an extremely dangerous weapon. It was located in a movable target for the search. Neither appellee nor Elkins was under arrest, and they were both alerted to what the officers were seeking." (435 F.2d at 642.)

In our case, the object of the search was burglary tools, not weapons; Evans was under arrest; and there was no evidence that Evans' confederate had been alerted or that the car would be spirited away.