**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard Alan BASILE,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Neal Spencer HOLDEN,
Defendant-Appellant.**

Nos. 77–1700, 77–1701.

United States Court of Appeals,
Ninth Circuit.

Jan. 6, 1978.

Rehearing and Rehearing En Banc
Denied Feb. 17, 1978.

Clarence Meyers (argued), Tucson, Ariz., Robert J. Hooker (argued), Tucson, Ariz., for defendant-appellant.

Dale A. Danneman, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and WONG,* District Judge.

WONG, District Judge:

Basile and Holden appeal from their convictions for possessing marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). We affirm.

Ferguson and Cottle, customs patrol officers, were patrolling a rural area near the Mexican border at 3:30 a. m. on October 17, 1976. The officers observed footprints of eight or nine people on a road approximate-

* Honorable Dick Yin Wong, United States District Judge, District of Hawaii, sitting by designation.

ly three-quarters of a mile north of the Mexican border. The prints, which were about three hours old, headed north. The shoes were of a kind worn by residents of Mexico. The footprints were followed by the officers up a wash and they soon discovered that similar footprints also went down the wash, indicating that the group had made a round trip from the border into Arizona and back again. Ferguson testified that he had "seen this type of operation many times before where people came across the border and leave stashes of marijuana and return to Mexico." The footprints led the officers on a northern course then west to a firebreak road running parallel to a railroad track, where the officers continued to follow the tracks for approximately a quarter of a mile. The tracks then proceeded under an old railroad right-of-way fence. The officers crossed the fence and continued to follow the footprints through an open field past an old abandoned trailer house, up a dirt road until they reached an area where there were five or six old and apparently abandoned cars. The cars were arranged in a horseshoe formation. Some were without tires and some without wheels. One of the vehicles was a blue panel truck. Like the other vehicles, it was set on blocks in a setting that "looked like a junk yard would." At 4:00 a. m., Cottle used his flashlight to look into the interior of the truck through a rear window. He saw several Mexican sugar sacks containing marijuana bricks. Estimates of the distance of the panel truck from Basile's house ranged from "20 or 30 yards" to 300 yards, with 100 yards probably being the best estimate.[1] Basile, however, denied ownership of the truck. The officers could not see the house or any other structure in the dark.

Cottle undertook surveillance of the panel truck, secreting himself behind some mesquite trees some 150 feet away from the truck. He was joined by two other officers. About 8:00 a. m., Cottle saw Basile go to the truck, open the door, look inside, then return to the house. Basile returned shortly, driving a station wagon. He backed the station wagon near the truck and loaded marijuana bricks into the station wagon. A few minutes later, Basile returned to the house. Shortly thereafter, he came out with Holden and both men began loading marijuana bricks into the station wagon.

After the loading was completed at about 8:50 a. m., the two men drove the station wagon toward the house area. At about 9:20 a. m., the station wagon left through the front gate, and crossed an overpass over the railroad tracks, headed north. Ten minutes later, Ferguson stopped the blue station wagon that Basile was driving. Holden was riding in the passenger seat. Ferguson asked Basile to open the rear of the station wagon, and he did so. Ferguson saw the marijuana bricks and arrested both men. Ferguson read both Basile and Holden their *Miranda* warnings, but he did not ask them if they wished to waive those rights.

DEA Agent Berrellez, who was summoned to the scene, advised Basile of his rights some 45 minutes later. Again, Basile was not asked for a waiver. Officer Ferguson heard Basile tell Berrellez that the marijuana was his and that Holden had nothing to do with the marijuana. Berrellez was not called as a witness. Later the same day, a search warrant was obtained for the blue panel truck where an additional quantity of marijuana was seized.

I

The district court denied the appellants' motions to suppress the marijuana on

---

1. At the suppression hearing, one witness testified that the distance between the panel truck and the house to be "Maybe, I guess 20 or 30 yards, probably." (Tr. 91.) At the trial, Officer Cottle testified under cross-examination by Mr. Hooker, counsel for defendant Holden, as follows:

"Q. And you said that the panel truck was about 300 yards from the residence?

A. As far as I can make out, sir.

    *    *    *    *    *    *

Q. Would you agree with me that we are talking more of a distance of 100 yards, in the neighborhood of a 100 yards, which would be 300 feet or 200 to 300 feet, would be the distance from the panel truck to the residence?

A. It could be, sir." (Tr. 338–339.)

the ground that the blue panel truck was "abandoned outside of the corral area," and neither appellant had any reasonable expectation of privacy in it. The Fourth Amendment protection against unreasonable searches and seizures does not extend to open fields. *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

■ Ever since *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), "the determination of whether an intrusion is an unreasonable search has depended on one's actual subjective expectation of privacy and whether that expectation is objectively reasonable." *United States v. Freie,* 545 F.2d 1217, 1223 (9th Cir. 1976). In *United States v. Magana,* 512 F.2d 1169 (9th Cir. 1975), this court stated that even a residential driveway is only a semiprivate area even though within the curtilage of the house. We have also said: "The Fourth Amendment's protections do not extend to the 'open field' area surrounding a dwelling and the immediately adjacent curtilage, and therefore, information gained as a result of a civil trespass on an 'open field' area is not constitutionally tainted, nor is the search and seizure which ultimately results from acquiring that information." *United States v. Capps,* 435 F.2d 637, 640 (9th Cir. 1970). In *Wattenburg v. United States,* 388 F.2d 853 (9th Cir. 1968), we held that the defendant's stockpile of Christmas trees was protected from governmental intrusion. The stockpile was between 20 to 35 feet away from the lodge and about five feet from a parking area used by personnel and patrons of the lodge. The court distinguished that case from *Janney v. United States,* 206 F.2d 601 (4th Cir. 1953), where an officer obtained information that a crime was being committed by concealing himself beside a hog pen which was about 100 feet west of the house. In the instant case, the panel truck was probably about 100 yards away from the house. The trial court's conclusion that the defendants had no reasonable expectation of privacy with respect to the panel truck is amply supported by the evidence.

## II

■ Pursuant to Rule 86 of the Rules of Procedure for the federal district court for the District of Arizona, the Government gave appellants notice that Basile had told DEA Agent Berrellez that the marijuana belonged to him and that he was taking it to a storage place in Bisbee. He admitted that a large amount of marijuana remained in the blue panel truck, and he added that Holden did not know that marijuana was in the station wagon. Basile objected to the admission of the confession on the ground that he had not waived his *Miranda* rights. The district court denied Basile's motion to suppress the confession, on the ground that Basile had impliedly waived his right to silence because he had been twice given his *Miranda* warnings and had nevertheless responded to questions.

The Government did not attempt to introduce the confession in its case in chief. When Basile was testifying in his own defense, he said that after the officers found the marijuana in the station wagon, "I told them that the two passengers in the car had nothing to do with it. . . . [b]ecause they didn't." He testified that he did not own the marijuana, but he knew it was on his property and he was trying to get rid of it. He also said that some Mexicans had left it on his property without consent. In its rebuttal case, the Government called Officer Ferguson to testify about the contents of Basile's confession to Berrellez made in Ferguson's presence. Ferguson's version of Basile's confession partially contradicted Basile's testimony because, according to Ferguson, Basile had admitted that the marijuana was his.

The district court did not err in denying Basile's motion to suppress his confession. Basile was twice given his *Miranda* warnings, the second 45 minutes after the first, but nevertheless freely and voluntarily made his statements. There was no showing of any overreaching by the officers and there is no contention by Basile that he did not understand the warnings. Although Holden declined to say anything, Basile never indicated that he did not wish to

make any statement. He testified in his own defense at the trial. The transcript indicates that he was an articulate and intelligent witness. Under the circumstances, the proper conclusion is that he knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See United States v. Hilliker,* 436 F.2d 101 (9th Cir. 1970); *United States v. Pruitt,* 464 F.2d 494 (9th Cir. 1972). *Cf., Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).[2]

### III

■ Holden wanted to prove Basile's statements that Basile owned the marijuana and that Holden was not involved. The Government could not call Berrellez to prove the confession because he was unavailable at the time of trial, and it did not call Ferguson to testify about the confession as part of its case in chief. Holden thus had no opportunity to bring out exculpatory information by cross-examining Ferguson during the Government's case in chief. Holden then sought to call Ferguson in the presentation of his defense to elicit the same information. The court sustained the Government's hearsay objection foreclosing Holden from calling Ferguson for that purpose. The court had earlier ruled that it would not permit Holden to call Basile, sustaining the Government's hearsay objection.

Holden contends that Basile's statements should have been admitted because they were either not hearsay, or if hearsay, were nevertheless admissible as hearsay exceptions. We need not decide if Holden's contentions are correct. When Basile later took the stand he admitted in both direct and cross examination that Holden had nothing to do with the marijuana. Officer Ferguson was called as a rebuttal witness. In response to the question as to what Basile said to Berrellez after Basile's arrest, he testified as follows: "One of the things he said was that the marijuana was his. Another thing that was said.is that he was taking it to Bisbee. He also said that Mr. Holden was not involved. He also stated that there was more marijuana left in the panel truck." Thus what Holden sought to have admitted earlier was eventually admitted and any error cured.

### IV

■ Holden further contends that the district court committed reversible errors in denying his motions for a separate trial from Basile, and for a continuance. The motion for severance was based on Holden's inability to examine Basile, Berrellez, or Ferguson in the order that he desired. In-

2. Defendant Mosley at first declined to give a statement but subsequently gave an inculpatory one which was later used in his trial and which resulted in his conviction. The Supreme Court held that the admission in evidence of the defendant's statement did not violate *Miranda* principles since the police, at the defendant's request, "immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." 423 U.S. at 106, 96 S.Ct. at 327.

The decision in that case turned upon the interpretation of the following passage from *Miranda:*

"Once warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent,* the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any

statement taken *after the person invokes his privilege* cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." [Emphasis added.] 384 U.S. 436 at 473–474, 86 S.Ct. 1602 at 1628, 16 L.Ed.2d 694, quoted in *Mosley* at 423 U.S. 100–101, 96 S.Ct. 321.

The issue in that case was under what circumstances the police may resume questioning after a defendant has previously indicated his wish to remain silent. In the instant case, however, we do not reach that issue since Basile never at any time signified his desire to remain silent. Absent any evidence of an indication by a defendant of his desire to remain silent, this Court's decisions in *Hilliker* and *Pruitt* are still controlling as to whether a defendant's *Miranda* rights have or have not been properly waived.

asmuch as we have concluded that any error committed by the court was cured by the later testimony of both Basile and Ferguson, Holden was not so prejudiced as to require a separate trial for him. The trial court therefore did not abuse its discretion. *United States v. Thomas,* 453 F.2d 141 (9th Cir. 1971); *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972); *United States v. Coplen,* 541 F.2d 211 (9th Cir. 1976). The motion for continuance was predicated on the unavailability of Berrellez as a witness. Ferguson testified as to what Basile had told Berrellez in Ferguson's presence. Holden argues that it is a fair assumption that Basile had made other statements to Berrellez exculpating Holden. He does not, however, offer any basis for such assumption. Under the circumstance, we cannot say that the trial court abused its discretion in denying a continuance. *Dearinger v. United States,* 468 F.2d 1032 (9th Cir. 1972); *United States v. Brandenfels,* 522 F.2d 1259 (9th Cir. 1975).

Appellants' remaining contentions are without merit and do not warrant discussion.

AFFIRMED.

CHAMBERS, Circuit Judge, concurring:

If the district court had found that there was a reasonable expectation of privacy for the truck against prying eyes, I would vote to uphold. But I believe the determination by the Court to the contrary was not clearly erroneous.

Thus, I concur in Judge WONG's affirmance.

HUFSTEDLER, Circuit Judge, dissenting:

The majority opinion cannot be reconciled with *Wattenburg v. United States* (9th Cir. 1968) 388 F.2d 853, on the search and seizure issue, with *Michigan v. Mosley* (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 on the *Miranda* issue, nor with the teaching of *Bruton v. United States* (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, on the severance issue.

I

The district court denied appellants' motions to suppress the marihuana on the ground that the blue panel truck was "abandoned outside the corral area adjacent to a house" and that neither appellant had any expectation of privacy in the truck. As the majority implicitly recognizes, the abandonment theory cannot be sustained on the record. The majority tries to sustain the search by applying the so-called "open field" doctrine. As we said in *United States v. Freie* (9th Cir. 1976) 545 F.2d 1217, 1223: Since *Katz v. United States* (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, "*Hester* [*Hester v. United States* (1924) 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (the source of the open field doctrine)] no longer has any independent meaning but merely indicates that open fields are not areas in which one traditionally might reasonably expect privacy." Thus, under *Katz* and *Freie,* the Fourth Amendment inquiry is not about geography, but about the state of mind of the person asserting the Fourth Amendment claim and the reasonableness of that person's expectation of privacy in respect of the area or the thing searched. The test for deciding whether an intrusion into an area near a home is constitutionally forbidden is "whether it constitutes an intrusion upon what the resident seeks to preserve as private even in an area which, although adjacent to his home, is accessible to the public." (*Wattenburg v. United States* (9th Cir. 1968) 388 F.2d 853, 857.)

Although the majority opinion acknowledges the existence of *Katz* and *Wattenburg,* it completely ignores both the rationale and the holdings of those cases. The majority does not address the constitutional test laid down in *Wattenburg* ; instead, it revives the defunct open field doctrine and takes as authority a Fourth Circuit case, decided before *Katz.* (*Janney v. United States* (4th Cir. 1953) 206 F.2d 601.)

The majority gives no explanation for distinguishing this case from *Wattenburg.* I infer from its citation of *Janney,* after citing *Wattenburg,* that the majority has

concluded that the owner has a reasonable expectation of privacy in a woodpile 20 to 35 feet from a parking area adjacent to his privately-owned guest lodge (*Wattenburg*), but a homeowner has no such expectation in a storage facility (in our case, the panel truck with wheels removed) if the facility is located 100 or more feet from the residential area. *Katz* and *Wattenburg* do not support any distinctions based simply on feet or yards, and *Janney* is no authority at all.[1]

The question presented in this case is whether Basile had any reasonable expectation of privacy in the immobilized panel truck near his home. He had as much, or an even greater expectation of privacy in that truck than the lodge owner had in the woodpile in *Wattenburg*. We can judicially notice the common practice in the rural areas of the West to use immobilized vehicles and trailers for extra household storage. This vehicle was parked, along with several other immobilized vehicles, near Basile's ranch house, as shown by aerial photographs of the layout. The record does not reveal the precise distance of the truck from the ranch house. (The majority's statement that the truck "was probably about 100 yards away from the house" is speculation; the record does not support the conjecture.) The location of the vehicle, like the woodpile in *Wattenburg*, was not in an open field, but in Basile's "back yard." The area was not "semiprivate," such as a residential driveway (*United States v. Magana* (9th Cir. 1975) 512 F.2d 1169)[2], and the truck, with wheels removed, was no more mobile than Wattenburg's woodpile.

The device of seizing a legally-insignificant fact (a difference of some lineal feet) to "distinguish" *Wattenburg* cannot conceal the reality that the majority opinion has refused to follow *Wattenburg*. I cannot countenance that departure from *stare decisis* and from the discipline of the law of the Circuit.

Applying *Wattenburg*, I would require suppression of the evidence discovered during the search of the panel truck, and under *Wong Sun v. United States* (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, I would also require suppression of the evidence later seized from the station wagon and from the truck, all of which flowed from the initial illegal search.

## II

The majority opinion holds that Basile waived his *Miranda* rights on proof that *Miranda* warnings were given and some time later Basile confessed. Its holding is contrary to *Miranda v. Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, which states: "[A] valid waiver will not be presumed simply from the silence of the

---

1. *Janney*, of course, is not controlling authority in this Circuit. *Wattenburg* did not distinguish *Janney* on the ground that the distance of the hog pen from the home in *Janney* was greater than the distance of the log pile from the house in *Wattenburg*. In *Janney*, the hog pen was searched to find a person who was reported to be committing a crime in the pen. Of greater moment, however, *Wattenburg* recognized that the open field doctrine applied in *Janney* was not viable after *Katz*.

2. The majority's reliance on *Magana* and *United States v. Capps* (9th Cir. 1970) 435 F.2d 637, is misplaced. In *Magana*, two officers were providing security for their fellow officers who had probable cause to arrest some narcotics traffickers. Upon the arresting officers' signals, the covering officers drove into the driveway of a residence where they saw Magana standing in an open garage. Magana's actions thereafter gave probable cause to arrest him.

After the arrest, one of the officers went into an adjacent garage and saw heroin. We held that the officers had justification for being in the driveway and that the contraband was inadvertently discovered during a search that was lawfully incident to the arrest. Thus, the search and seizure in *Magana* was similar to that in *Ker v. California* (1963) 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

In *Capps*, officers had a warrant to search a Pontiac to obtain a red bag containing a machine gun. They did not discover the bag in the Pontiac, but they saw a red bag answering the description, on the back seat of an Oldsmobile that was parked in the same driveway. The *Capps* court distinguished *Wattenburg v. United States, supra*, 388 F.2d 853, on the ground that *Wattenburg* involved actions by officers who were not in possession of search warrants. (*See* 435 F.2d at 641–42 n.7.)

accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." (384 U.S. at 475, 86 S.Ct. at 1628.) The facts that Basile testified at trial, that he was intelligent, and that he did not contend that he did not understand the warnings do not distinguish this case from *Miranda*. The burden was not on Basile or Holden to prove non-waiver; the burden was on the Government to prove waiver.

The majority opinion does not address *Michigan v. Mosley* (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, which reaffirmed *Miranda*. In *Mosley*, unlike this case, the record was not silent on waiver. Mosley signed a waiver at his initial interrogation, then asserted his right to silence. After an interval of several hours and after renewed *Miranda* warnings, Mosley voluntarily responded to questioning by police officers. The Court held that the Government had carried its burden of proving waiver of the suspect's right to silence. The record in our case supplies no basis to infer waiver of Basile's *Miranda* rights.[3]

### III

Basile's confession exculpating Holden was hearsay because Holden sought to introduce the evidence for the purpose of proving the truth of Basile's assertions. The question is whether the statements were nevertheless admissible as a statement against Basile's penal interests. Under Evidence Code Rule 804(b)(3), the statement was admissible if corroborating circumstances indicated that the statements were trustworthy and if Basile was unavailable within the meaning of Evidence Code Rule

804(a)(1) and (2). The district court's prior rulings had made Basile unavailable to Holden in the presentation of his case in chief. The district court did not specifically rule on the question whether Basile's statements were adequately trustworthy, but the Government is not in the position to urge that they were untrustworthy since the Government sought to introduce them into evidence and eventually did so. Basile's statements exonerating Holden are at least, arguably, statements against Basile's penal interests, and the statements could have been deemed as trustworthy as the Government claimed his confession was. In absence of some opinion expressed by the district court and in absence of the *Miranda* problem, Holden should have been able to interrogate Ferguson about Basile's statements against his penal interests as part of Holden's own case in chief.

Assuming that Holden could thus move around the hearsay rule, he confronted another barrier to the admission of the testimony. As I have pointed out, a confession taken in violation of the *Miranda* rule could not be admitted against Basile for the purpose of proving the truth of the facts asserted, and the only reason Holden wanted the evidence was for precisely that purpose. This case thus presents the reverse side of the *Bruton* coin (*Bruton v. United States* (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476), because Basile's statement could not be used to exculpate Holden without inculpating Basile. The only way to safeguard Holden's right to introduce the exculpatory evidence and at the same time protect Basile from evidence inadmissible

---

**3.** The Government argues alternatively that even if the confession was obtained in violation of *Miranda*, the court did not err in permitting the Government to introduce Basile's confession on rebuttal, because under *Oregon v. Hass* (1975) 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570, and *Harris v. New York* (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, the confession was admissible for the purpose of impeaching Basile's testimony about what he told the officers. A partial inconsistency between Basile's testimony at the time of the trial and his confession, as attested by Officer Ferguson, existed because in his testimony Basile said that he told the officers at the time of his arrest that the marihuana was not his. Ferguson testified that Basile had admitted that the marihuana was his. Neither *Hass* nor *Harris* assists the Government in this case because, consistently with the court's prior decision overruling *Miranda* objections, Basile's confession was admitted to prove the truth of the facts asserted and not simply for impeachment purposes. The fact that Basile's confession was not limited to impeachment is clear because the district court denied Basile's request for a jury instruction that Ferguson's testimony was to be considered solely for impeachment purposes.

against him under *Miranda* is to sever the trials of the two men.

The error was not cured by the opportunity that Holden later had to cross-examine Basile after he took the stand. The maximum that Holden could have realized from cross-examining Basile was a denial that Basile owned the marihuana, with an opportunity to impeach that portion of Basile's testimony, and an admission that Basile had made exculpatory statements about him. The ability to bring out before the jury that Basile was a liar certainly did not cast Basile's exculpatory statements about Holden in an attractive light. (*Cf. Chambers v. Mississippi* (1973) 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297; *United States v. Carter* (5th Cir. 1974) 491 F.2d 625; *United States v. Paquet* (5th Cir. 1973) 484 F.2d 208.)

I would reverse.