**UNITED STATES of America, Appellee,**

v.

**Gary Charles FINNEGAN, Appellant.**

**No. 76–3403.**

United States Court of Appeals,
Ninth Circuit.

Dec. 19, 1977.

Robert D. Carpenter, Los Angeles, Cal., for appellant.

Juan P. Robertson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before ELY and CARTER, Circuit Judges, and ENRIGHT, District Judge.*

ENRIGHT, District Judge:

Appellant Finnegan was tried before a jury in the United States District Court for the Central District of California and was convicted for conspiracy to import and possess cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 846 and 963. Judgment of conviction was entered on March 1, 1976. In this appeal, Finnegan has asserted six errors by the trial court below. Upon a review of all the arguments advanced by the appellant, we find no reversible error and consequently affirm.

I

Gary Charles Finnegan was a participant in a conspiracy led by James J. Boyle which imported cocaine from South America and distributed it in Los Angeles, San Francisco and Kansas City. In August 1972 (the approximate inception of the conspiracy), Finnegan and Boyle traveled to Santiago, Chile, where they purchased cocaine from a Chilean dealer, "Alfredo," which they subsequently smuggled into the United States *via* El Paso, Texas. Encouraged by their success, Boyle, Finnegan and their coconspirators made five additional trips to South America, in September, October and December 1972, and February and April

* Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

1973. A total of approximately 40 to 50 pounds of cocaine was brought into the United States in this manner. In addition to transporting cocaine himself, Finnegan recruited other couriers for this task and provided funds, apparently out of his own pocket, which would be used to purchase cocaine in South America.

In November 1972, enroute to meet Boyle in Los Angeles, appellant was stopped for speeding by the California Highway Patrol. Testimony indicated darkness had fallen and defendant had been traveling at approximately 85 miles per hour. The patrol officer approached Finnegan's car window and while inquiry was being made concerning vehicle registration, Finnegan furtively attempted to stuff a large amount of currency into the glove compartment. This money was in the officer's plain view when appellant attempted to conceal it. Also in plain view was an object clearly recognizable as a gun case on the floor of the vehicle. Since the officer was alone, he placed Finnegan in custody,[1] handcuffed him and removed him from the vehicle. He then removed the currency ($1,700) from the glove compartment, examined the gun case and found a .380 automatic pistol and two fully-loaded clips inside the case and further observed a suitcase in the hatchback of the car. Inquiry was then made of appellant as to whether there was any more currency in the car. Appellant replied in the negative. When the officer thereafter retrieved the suitcase, appellant then exclaimed that more money was contained therein. Having heard Finnegan admit the falsification, the suitcase was then completely opened and was found to contain full bundles of money wrapped in socks knotted at the end. The Highway Patrol later determined that approximately $43,000 was in the suitcase.

The officer radioed his superiors, support units arrived and defendant's car was taken to a police garage where its contents normally would have been inventoried pursuant to standard police procedure. Appellant's money and belongings were later returned to him and he was released to go on his way.

## II

■ Appellant's first challenge is directed at the sufficiency of the evidence to support a guilty verdict. In evaluating such an argument, the evidence must be viewed in the light most favorable to the government. *United States v. Ramirez-Rodriguez*, 552 F.2d 883, 884 (9th Cir. 1977).

■ The record shows that there was ample evidence to support the jury's finding. Boyle himself told several of the co-conspirators on separate occasions that Finnegan was his partner, had personally helped him on the smuggling trip and provided money for the cocaine purchases. All of such statements were in furtherance of the conspiracy. Corroboration of these assertions was provided by Finnegan's own admissions. He told one witness, whom he was trying to recruit for the conspiracy, that she would be provided with plastic bags and would be expected to smuggle in five pounds of cocaine at a time. One cocaine courier testified that Finnegan made statements to her which indicated his awareness that the money he was delivering would be used to purchase cocaine. Another courier testified that Finnegan told her that he was Boyle's partner.

Other circumstances forged the link between Finnegan and the conspiracy. Finnegan was a frequent visitor at Boyle's Decker Canyon house in Los Angeles, which apparently was the headquarters of the conspiracy. Witnesses at both ends of a phone conversation testified to a telephone call Finnegan received from Boyle in late April 1973, in which Boyle castigated Finnegan for not giving a courier the correct amount of money for her trip to Peru. The record adequately establishes that the government has met its burden of proof.

---

1. Appellant did not dispute probable cause to arrest. The facts and circumstances known to the apprehending officer at the time of the incident manifestly show that appellant was carrying a concealed weapon in a vehicle, in violation of Cal.Penal Code § 12025.

### III

Finnegan's major contention on this appeal relates to evidence introduced concerning a traffic incident. Appellant asserts that the trial court should have suppressed the evidence relating to the discovery of an automatic pistol in the gun case on the floor of appellant's auto and $1,700 in cash in his glove compartment on the grounds that this evidence was the fruit of a warrantless search and was unreasonable under the Fourth Amendment. Under the "plain view" doctrine, however, discovery of evidence does not constitute a "search" within the meaning of the Fourth Amendment if an officer, standing in a place where he has a right to be, merely sees what is in plain view before him. *Ker v. State of California*, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 1634–35, 10 L.Ed.2d 726 (1963). Since the patrol officer lawfully stopped Finnegan for speeding, he had a right to stand next to Finnegan's car door and observe anything in plain view through the window. Accordingly, there was no search here. The subsequent *seizure* of the gun and cash was lawful, since an officer viewing an item inside an automobile which reasonably appears to be the instrumentality of a crime thereby acquires probable cause to arrest the suspects and search the car more thoroughly. *United States v. Webb*, 533 F.2d 391, 393–94 (8th Cir. 1976); *United States v. Lara*, 517 F.2d 209 (5th Cir. 1975).

After observing Finnegan's furtive actions and upon discovering $1,700 in cash and an automatic pistol, the patrol officer had probable cause to believe that the other areas of the vehicle may have contained contraband. Under *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 453 (1925), *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and *United States v. Gulma*, 563 F.2d 386, Nos. 76–3188, 76–3395 [9th Cir., 1977] (construing *Chambers* and *Carroll*), the moveable nature of an automobile is an exigent circumstance which justifies a warrantless search if there is probable cause to believe that the auto contains contraband or the instrumentality of a crime. Accordingly, the search of the suitcase was lawful.

*United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), does not dictate an opposite result. Although there is a superficial similarity between this case and *Chadwick*—they both involve luggage—a close reading of *Chadwick* shows that that case was concerned with the creation of whole, new *classes* of objects to be excepted from general proscription against warrantless searches rather than with the scope of the automobile search exception.

In *Chadwick*, railroad officials observed two individuals loading a footlocker on a train bound for Boston. Their suspicions were aroused when they noticed that it was leaking talcum powder, a substance often used to mask the odor of marijuana or hashish, and they reported this event to federal agents who relayed the information to their counterparts in Boston.

When the train arrived in Boston, the two individuals who had loaded the footlocker in San Diego were on hand and lifted the footlocker into the trunk of Chadwick's waiting car. At that point, while the trunk was still open and before the car engine had been started, federal agents arrested all three and seized the footlocker. Ninety minutes later, without a warrant, the agents opened the footlocker, which had been locked with a padlock and regular trunk lock.

In district court, the government's effort to justify the warrantless search failed because the court saw the relationship between the footlocker and Chadwick's automobile as merely coincidental. The government did not renew this argument in the Court of Appeals, but instead sought to justify the search on the theory that a footlocker has the same mobile characteristics which support warrantless searches of automobiles. The Court of Appeals rejected this argument and the Supreme Court affirmed.

Presented with an invitation to *extend* the automobile exception to footlockers, the Court noted that it is the "diminished ex-

pectation of privacy which surrounds the automobile",[2] rather than its mobility, which justifies warrantless search. However, since a man loading a padlocked footlocker on a train may reasonably expect that it will not be opened by prying police or railroad officials, the high expectation of privacy attendant in these circumstances forbids a warrantless search.

We note at the outset that a unique fact situation was presented in *Chadwick* which controlled the outcome of the case. Had the facts been only marginally different, as Justice Blackmun pointed out in his dissenting opinion,[3] the search would have been upheld under established exceptions to the warrant requirement. The agents could have avoided having the footlocker search held unconstitutional either by delaying the arrest for a few minutes until the car was in motion or by conducting the search at the time and place of the arrests.

The Supreme Court in *Chadwick* did not substitute a test of "expectation of privacy" for probable cause. Indeed, the Court did not address the tests for, or scope of, the automobile search exception since those issues were not before it in light of the government's failure to renew on appeal its argument based on the automobile exception. Rather, *Chadwick* explicates the rationale for excepting a new class of *objects* from the usual proscription against warrantless searches. *Chadwick* lays down a rule whereby courts faced with an invitation by the government to define a new class of objects which may be searched without warrant must consider whether there is a diminished expectation of privacy with respect to that *class* of objects.

Since the government is not suggesting on this appeal that the class of objects which may be searched without warrant be broadened to include suitcases but is instead relying upon an already existing exception—the automobile search exception—this court is not required to apply the *Chadwick* test as it relates to expectation of privacy. Instead, we turn to the pre-existing law of automobile searches.

■ It is well established that automobiles may be searched without warrant where probable cause is present. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In *United States v. Evans*, 481 F.2d 990 (9th Cir. 1973), this court applied the broad rule enunciated in *Chambers* and held that footlockers inside moving automobiles may be searched without warrant if it appears from the totality of the circumstances that probable cause exists to search the footlocker and that exigent circumstances are present.[4] As we indicated, the patrol officer had probable cause to search the suitcase. As in *Evans*, exigent circumstances were present here because the automobile containing the luggage could be moved. As in *Evans*, the patrol officer might have seized the suitcase pending a magistrate's determination but in that event a seizure would nonetheless have occurred, and this would in itself amount to a substantial interference. The *Evans* court found the circumstances to be exigent in a factual context remarkably similar to that presented here and we will follow the *Evans* holding. Accordingly, we find that the presence of probable cause and exigent circumstances rendered lawful the warrantless search of appellant's suitcase.

Were we to rule that *Chadwick* applies here and renders the search of the suitcase illegal, inconsistent and contradictory results would follow. For instance, a police officer could search and seize a brick of marijuana lying inside the trunk of a car but not a brick of marijuana lying inside a suitcase in the trunk of a car.

---

2. *United States v. Chadwick*, 433 U.S. at 12, 97 S.Ct. at 2484.

3. *United States v. Chadwick*, 433 U.S. 1 at 22–24, 97 S.Ct. 2476 at 2489–90, 53 L.Ed.2d 538 at 555–56 (1977).

4. *See also United States v. Gulma*, 563 F.2d 386, Nos. 76–3188, 76–3395 (9th Cir. 1977).

Other courts of appeals have reached a similar conclusion. *See United States v. Tramunti*, 513 F.2d 1087, 1104–05 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *United States v. Issod*, 508 F.2d 990, 993 (7th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975); *United States v. Soriano*, 497 F.2d 147 (5th Cir. 1974) (en banc).

Finally, even were we to find that *Chadwick* applies and requires a ruling that the search of the suitcase was unlawful, we would nonetheless be compelled to affirm in view of our conviction that the admission into evidence of the fruits of the search was harmless beyond a reasonable doubt.[5] *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The $43,000 did not itself lead to the discovery of any other evidence produced at trial; thus, no other evidence was "tainted" by this illegal search. Even when the evidence of the $43,000 is excluded, there remains not only the probative testimony given by Finnegan's coconspirators, but Finnegan's own damaging admissions as well. This ample evidence demonstrates beyond a reasonable doubt that Finnegan was a member of the conspiracy.

## IV

 Appellant argues that the trial court erred in declining to impose sanctions upon the government for failing to produce certain interview notes of an attorney for the government discoverable under the Jencks Act.[6] Although the interview notes in question may have been a "statement" within the meaning of the Jencks Act,[7] *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976), and thus discoverable, the trial court has broad discretion in determining whether Jencks Act sanctions ought to be imposed. Such discretion is to be guided by a consideration of the culpability of the government for the loss of the documents and the injury to the defendants. *United States v. Augenblick*, 393 U.S. 348, 354–56, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *United States v. Miranda*, 526 F.2d 1319, 1325–26 (2d Cir. 1975), *cert. denied* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *United States v. Perry*,

471 F.2d 1057, 1062, 153 U.S.App.D.C. 89 (1972). Under the facts presented here, the trial court did not abuse its discretion in declining to impose sanctions. The loss of the notes was not intentional and perhaps not even negligent. The government's bad faith was not in issue. The defense was able to vigorously cross-examine the witness who gave the statement sought to be discovered. The notes of an investigator who was present throughout the interview were produced and utilized by the defense in cross-examination. The record shows the trial court's satisfaction that this witness was examined "quite thoroughly." Under these facts, it was not reversible error for the trial court to refuse to apply Jencks Act sanctions. *Ogden v. United States*, 303 F.2d 724, 740 (9th Cir. 1962).

## V

The remaining arguments advanced by appellant are without merit. Our review of the instructions given by the trial court persuades us that no reversible error occurred in this regard. The trial court did not err in denying appellant's motion for a new trial. Appellant's contention that the district court lacked subject matter jurisdiction because the government published a schedule of controlled substances in the Code of Federal Regulations instead of the Federal Register is amply refuted by this court's recent holding in *United States v. Eddy*, 549 F.2d 108 (9th Cir. 1976).

Affirmed.

---

5. We note in passing that the search of the suitcase may well have been justified under the inventory search and inevitable discovery doctrines. After the patrol officer discovered the gun case and the $1,700 in the glove compartment, he could have impounded the auto. The Highway Patrol then could have conducted an inventory search, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), in which the suitcase would have been searched and the cash would have inevitably been discovered.

6. 18 U.S.C. § 3500 (1970).

7. 18 U.S.C. § 3500(e) (1970).