588 F.2d 275
 Doron WEINBERG and Patti Roberts, Plaintiffs-Appellants,
v.
John MITCHELL, Individually and as Attorney General of the
United States, Defendant-Appellee.
Terence Kayo HALLINAN, Plaintiff-Appellant,
v.
John MITCHELL, Individually and as Attorney General of the
United States, Defendant-Appellee.
 Nos. 76-3250, 76-3645.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 19, 1978.
 
 Charles C. Marson, San Francisco, Cal., for plaintiffs-appellants.
 David H. White, R. John Seibert, Attys., Washington, D. C., for defendant-appellee.
 On Appeal from the United States District Court for the Northern District of California.
 Before BROWNING and MERRILL, Circuit Judges, and LINDBERG, District Judge.*
 MERRILL, Circuit Judge:
 
 
 1
 Between 1969 and 1972 warrantless telephone surveillance of certain persons not parties to this action was carried out under authorization of defendant-appellee as Attorney General of the United States. As a result of this surveillance some conversations of the plaintiffs in these two consolidated cases were incidentally intercepted. The surveillance had been authorized for the purpose of collecting information believed by the Attorney General to be necessary for the protection of the national security. The conceived threat to security was domestic, not foreign. These civil actions were brought to secure damages for the warrantless interceptions. Plaintiffs based their claims on alleged violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, and the First, Fourth, Fifth and Sixth Amendments to the Constitution of the United States.
 
 
 2
 In 1972, after these interceptions had occurred, the Supreme Court faced the question whether a warrant was required for telephone surveillance authorized by the Attorney General to secure information respecting domestic threats to the national security. United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (hereinafter Keith[1]). The Court held that while warrants for such surveillance were not required by Title III,[2] they were required by the Fourth Amendment. The question we face is whether we should retroactively apply the holding in Keith and thus render unlawful warrantless domestic security surveillance occurring prior to the announcement of that decision. The district courts in both of these cases held that the decision was not to be given retroactive application. Summary judgment in favor of defendant-appellee was granted in each case. We affirm.
 
 
 3
 In Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Court recited the proper standards for retroactive application of an announced rule:
 
 
 4
 "In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, (citation omitted) or by deciding an issue of first impression whose resolution was not clearly foreshadowed (citation omitted). Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' (citation omitted) Finally, we have weighed the inequity imposed by retroactive application, for '(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' "
 
 
 5
 Id. at 106-07, 92 S.Ct. at 355.
 
 
 6
 Upon the first factor appellants assert that no new principle of law was established in Keith, either by overruling a clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed. To the contrary, they assert, the principles involved had already been established in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). There was, it is stated, no sharp departure from any prior judicial holding. Any judicial authority for unwarranted wiretapping upon which the Attorney General might have relied was based, they assert, upon Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), which was expressly overruled by Katz.
 
 
 7
 We cannot agree. There may not have been any judicial authority for the warrantless wiretaps, but the executive branch had long proceeded on the assumption that surveillance exercised in the interest of national security was within its power. As the Court in Keith notes:
 
 
 8
 "The nature and extent of wiretapping apparently varied under different administrations and Attorneys General, but, except for the sharp curtailment under Attorney General Ramsey Clark in the latter years of the Johnson administration, electronic surveillance has been used both against organized crime and in domestic security cases at least since the 1946 memorandum from (Attorney General Tom) Clark to Truman."
 
 
 9
 407 U.S. at 311 n. 10, 92 S.Ct. at 2133.
 
 
 10
 More to the point, however, this was in our judgment an issue of first impression whose resolution was not clearly foreshadowed. The opening paragraph of the opinion in Keith seems to us to make it clear that the Court itself so regarded the issue:
 
 
 11
 "The issue before us is an important one for the people of our country and their Government. It involves the delicate question of the President's power, acting through the Attorney General, to authorize electronic surveillance in internal security matters without prior judicial approval. Successive Presidents for more than one-quarter of a century have authorized such surveillance in varying degrees, without guidance from the Congress or a definitive decision of this Court. This case brings the issue here for the first time. Its resolution is a matter of national concern, requiring sensitivity both to the Government's right to protect itself from unlawful subversion and attack and to the citizen's right to be secure in his privacy against unreasonable Government intrusion."
 
 
 12
 Id. at 299, 92 S.Ct. at 2128.
 
 
 13
 In earlier electronic surveillance cases the courts had dealt with the uncovering of proof of crime to be used in a criminal trial. The issuing of warrants in connection with such searches was a traditional judicial function; the search for which the warrant was issued was preliminary to trial and thus within the area of judicial operation. In Keith for the first time the Court dealt with a search in connection with intelligence, not crime with an executive, not a judicial, operation. Requiring a warrant under these circumstances meant that the executive branch could not exercise this function assigned to it by the Constitution, Article II, § 1, without first obtaining judicial approval. This was quite a step beyond the warrant requirements in Katz and other cases. In Keith the Court was involved in problems bearing on the separation of powers and the effective operation of our system of checks and balances. There for the first time the Court was faced with the need to reconcile arguably conflicting provisions of the Constitution. The question was not whether an intrusion by way of telephone surveillance constitutes a search falling under the Fourth Amendment. That question had indeed been settled by Katz. The question was whether, on balance, the Fourth Amendment values attendant upon individual privacy and free expression outweighed the need for protection of the national security, the responsibility for which is assigned to the President under Article II. That the result was not foreshadowed and the decision not an easy one to reach appears clearly from the language of the Court.
 
 
 14
 The Court gave serious and respectful consideration to the contentions of the government that the warrant requirement of the Fourth Amendment governed the investigation of criminal activity and is inappropriate in the setting of national security; that "probable cause" in the national security context is cause to believe that surveillance is necessary in order to protect the national security, and that courts lack the knowledge, experience or techniques for determining the existence of such cause; that disclosure of probable cause to a judge would make public facts or beliefs which, in the interest of national security, should remain secret. Keith, supra, 407 U.S. at 318-20, 92 S.Ct. 2125. After consideration of these contentions at length the Court rejected them, but stated:
 
 
 15
 "These contentions in behalf of a complete exemption from the warrant requirement, when urged on behalf of the President and the national security in its domestic implications, merit the most careful consideration. We certainly do not reject them lightly * * * ."
 
 
 16
 Id. at 319, 92 S.Ct. at 2138.
 
 
 17
 We conclude that Keith did establish a new principle of law in deciding an issue of first impression whose resolution was not clearly foreshadowed.
 
 
 18
 The second Chevron factor whether the purpose and effect of the rule would be furthered by retroactive operation was taken from Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In that case the Court considered the purpose of the exclusionary rule and noted that it was to meet the necessity for an effective deterrent to illegal police action. The Court concluded: "We cannot say that this purpose would be advanced by making the rule retrospective." Id. at 637, 85 S.Ct. at 1741.
 
 
 19
 The purpose of the rule in Keith, as we view it, is to protect individual privacy and free expression by rendering warrantless surveillance unlawful. The rule looks to a future free from such surveillance. As with the Court in Linkletter, "We cannot say that this purpose would be advanced by making the rule retrospective." It would, it is true, serve to vindicate the rights of those who have suffered such surveillance in the past, but for retroactive application such vindication must be scrutinized in light of the third Chevron factor the inequity that results.
 
 
 20
 As to that factor, retroactively applying Keith to create civil liability when the result of that decision was not clearly foreshadowed would be as inequitable as Ex post facto criminal liability. Appellee asserts that to hold him personally liable for exercising his statutory responsibility to evaluate and act upon an uncertain area of the law would be nothing short of punitive. We agree.
 
 
 21
 We conclude that Keith should not be given retroactive operation and that its holding does not apply to these pre-Keith wiretaps.
 
 
 22
 Appellants contend that it was error to grant summary judgment since issues of fact remain to be tried upon the question whether the surveillance was in truth for the purpose of securing information respecting domestic threats to the national security. Affidavits of defendant-appellee filed in each case dealt with his purpose in authorizing the surveillance. They provide support for summary judgment in each case. Nothing in opposition was filed by appellants save appellant Weinberg's affidavit to the effect that he believed the taps were illegal. At no point did appellants seek discovery from appellee relevant to the motions for summary judgment; nor did they seek to continue the hearing on the motion in order to be able to pursue discovery. We conclude that appellants failed to establish a factual issue in this respect, and that the grant of summary judgment was not error. Burgwin v. Mattson, 522 F.2d 1213 (9th Cir. 1975), Cert. denied, 423 U.S. 1087, 96 S.Ct. 879, 47 L.Ed.2d 98 (1976).
 
 
 23
 Our holding respecting the retroactive application of Keith makes it unnecessary to consider the holding of one district court to the effect that defendant-appellee's good faith provided a second basis for summary judgment. Our holding respecting Keith also serves to defeat appellants' claims under the First, Fifth and Sixth Amendments.
 
 
 24
 Judgment affirmed.
 
 
 
 *
 Honorable William J. Lindberg, Senior United States District Judge of the Western District of Washington, sitting by designation
 
 
 [1]
 In the lower courts the Honorable Damon J. Keith, district judge, was named in the entitlement as respondent. Other courts and briefing parties have adopted this simplified reference. We follow suit
 
 
 [2]
 The Court in Keith states categorically that "the Act simply did not legislate with respect to national security surveillances." 407 U.S. at 306, 92 S.Ct. at 2131. Near the end of the opinion, the Court reiterates, "(O)ur decision (does not) rest on the language of § 2511(3) or any other section of Title III of the Omnibus Crime Control and Safe Streets Act of 1968." Id. at 322, 92 S.Ct. at 2139
 In Zweibon v. Mitchell, 170 U.S.App.D.C. 1, 516 F.2d 594 (1975), Cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), the court interpreted this language to mean only that Title III does not act to limit the President's freedom to engage in constitutional warrantless national security surveillance. Following this interpretation of Keith, the Zweibon court held that the remedies provided by Title III do apply in all cases where a warrant is required, including those involving domestic security wiretaps. Since we hold, Infra, that a warrant was not required prior to Keith, we need not reach the question whether Title III provides a remedy for unlawful domestic security wiretaps. To the extent that Zweibon may be read as holding that warrantless national security wiretaps were illegal prior to Keith, we must respectfully disagree.