**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel STEWART, Defendant-Appellant.**

No. 78–1787.

United States Court of Appeals,
Ninth Circuit.

April 19, 1979.

Eb F. Luckel, Jr., Asst. U.S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Judd C. Iversen (argued), San Francisco, Cal., for defendant-appellant.

Before MERRILL and SNEED, Circuit Judges, and LINDBERG,* District Judge.

## AMENDED OPINION

PER CURIAM:

The appellant, Daniel Stewart, appeals his conviction under 21 U.S.C. § 841(a)(1) (1976) of possession of methamphetamine with the intent to distribute. The methamphetamine was discovered during a warrantless search of an attaché case that was taken by police from an automobile in which Stewart had been a passenger. The district court concluded that the search which produced the contraband was reasonable and Stewart's motion to suppress was denied. We agree with the district judge's conclusion that the search was reasonable under the facts set forth below.

During October 1976, Federal Drug Enforcement Agents began an investigation of one Spencer Marques concerning the illegal manufacture and sale of methamphetamine. Spencer's brother, William, had been implicated in the operation, and glassware and chemicals had been observed being delivered at William's house in Menlo Park, California. On the morning of May 23, 1977, Spencer informed an undercover D.E.A. agent that six pounds of methamphetamine were being manufactured and that the sale of the drugs to the undercover agent would occur the following day.

Also on May 23rd, William Marques was observed leaving his home in the company of Daniel Stewart, who was not then a suspect in the investigation. The two drove Marques' car to Lake Tahoe. At approximately noon the next day (i. e., the day of the sale), Stewart was observed carrying a brown suitcase and a black attaché case. The government's agents lost sight of Stewart briefly and he was next observed in a parking lot where he met with William Marques at Marques' car. Stewart was seen removing the attaché case from the trunk of the car and, after showing Marques the contents of the attaché case, placing it in the car's passenger compartment. The agents who observed the foregoing activity could not see what was contained in

* Hon. William J. Lindberg, Senior United States District Court Judge, for the Western District of Washington, sitting by designation.

the attaché case. Marques and Stewart then got into the car, surveillance of them was discontinued, and they were not observed again until approximately five and one-half hours later when they arrived at Marques' home in Menlo Park.

While William Marques and the appellant were on their way back from Lake Tahoe, Spencer Marques had informed the D.E.A.'s undercover agent that the methamphetamine sale scheduled for that afternoon was cancelled because Spencer thought he was being observed by narcotics agents. By the time William Marques and the appellant arrived at Marques' house, the D.E.A.'s investigating agent, Dell'ergo, had already obtained a warrant to search the house and an authorization to arrest the Marques brothers. When Marques and Stewart arrived at the Menlo Park home they discovered Dell'ergo (together with other D.E.A. officers and San Mateo police) in the process of searching Marques' home for the methamphetamine. Dell'ergo interrupted his house search to instruct other officers that Marques and Stewart were to be kept in custody while he (Dell'ergo) completed the search of Marques' residence. Dell'ergo then returned to the house for a short period of time during which Stewart was held in custody outside of the car and his person was fully searched.[1] The remainder of the house search by Dell'ergo failed to uncover any drugs.

Upon returning to the car, Dell'ergo placed William Marques under arrest and conducted a search of Marques' person. Dell'ergo discovered a small quantity of what he identified as freshly made methamphetamine on Marques. Dell'ergo then informed Marques that the car which Marques had driven from Lake Tahoe with Stewart as a passenger was seized pursuant to 21 U.S.C. § 881 (1976).[2] The car was then searched and Stewart's attaché case,[3] which was still lying on the rear passenger seat, was opened. The attaché case contained the methamphetamine which was to have been sold earlier that day. Stewart was then formally arrested. He was subsequently convicted of possession of methamphetamine with the intent to distribute it and he appeals the trial judge's refusal to suppress the drugs found in his attaché case.

Stewart argues that the fact that the Marques vehicle was properly seized for forfeiture was insufficient to warrant either his arrest or the seizure of his person and attaché case. *United States v. DiRe,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *see also, United States v. Chadwick,*

---

1. The record discloses that contraband was discovered on Stewart during this search of his person by a San Mateo County detective. The detective was acting on directions from Dell'ergo who, in a declaration submitted to the district court, stated: "Although I was aware of the discovery of dangerous drugs in STEWART's possession prior to the search of the 1965 Rambler, that fact had no bearing on my intention to seize and search the Rambler thereafter."

2. Section 881 provides in part:
   (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

   .  .  .  .  .

   (3) All property which is used, or intended for use, as a container for property described in paragraph (1) .  .  .  .  .
   (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any man-

ner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) .  .  .  .

   .  .  .  .  .  .

   (b) Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—
   (1) the seizure is incident to an arrest or a search warrant .  .  .  .

3. Although the government has raised a question concerning who, in fact, owned the attaché case, the panel assumes that it was Stewart's for purposes of his Fourth Amendment rights. On those limited occasions during which the attaché case was observed prior to the appellant's arrest, only he was seen in actual possession of it.

433 U.S. 1, 16, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (concurring opinion). He asserts that the government did not have the right to order him from the vehicle—thereby separating him from his attaché case—and then, later, search the attaché case any more than it would have had the right to search the attaché case had Stewart taken it with him when he left the car. Alternatively, Stewart relies on *Chadwick* and *United States v. Berry,* 560 F.2d 861 (7th Cir. 1977), *vacated,* 571 F.2d 2 (1978) (rehearing granted on the issue of *Chadwick's* retroactivity), for the position that even if the seizure of the attaché case was lawful, its nonconsensual search was unreasonable since no exigent circumstances existed at the time of the search which could have excused the requirement that a warrant first be obtained.

The United States regards the warrantless search of the attaché case as reasonable either because it fell within the scope of the exploratory or investigative search [4] permitted by the seizure of the vehicle for forfeiture, *United States v. Johnson,* 572 F.2d 227 (9th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (June 19, 1978), or because it fell within the scope of the vehicle search permitted by *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[5]

█ We agree with Stewart only to the extent that, were *Chadwick* applicable, it would require suppression of the contents of the attaché case. We hold, however, that *Chadwick* is not to be applied retroactively and affirm his conviction on the basis of Ninth Circuit cases involving pre-*Chadwick* searches.

On June 21, 1977, the Supreme Court decided that, absent some exigency requiring an immediate luggage search, a warrant must be obtained before law enforcement officers can search luggage which they have seized from a vehicle even though the seizing officers had probable cause to believe the luggage contained contraband. *United States v. Chadwick, supra,* 433 U.S. at 15, 97 S.Ct. 2476. That decision constituted a substantial departure from this circuit's luggage search cases which failed to clearly distinguish between exigencies relating to a search and those relating to a seizure without a search.

In *United States v. Evans,* 481 F.2d 990 (9th Cir. 1973), we reversed the suppression of a shotgun which police found during a warrantless search of a footlocker that had been confiscated from the trunk of an automobile. Prior to the search, the owner of the footlocker, Evans, had been arrested and handcuffed. We upheld the footlocker search. The court reasoned as follows:

> The proper test was succinctly stated by the Supreme Court in *Chambers:*
>
> "Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment. 399 U.S. at 51–52, 90 S.Ct. at 1981."

---

4. The government has not suggested in this appeal that the search of the attaché case was anything but an attempt to obtain evidence. *United States v. Mitchell,* 458 F.2d 960, 963–64 (9th Cir. 1972). Nor has the appellee sought to justify the seizure of Stewart's attaché case as either incident to his arrest which arguably occurred prior to the seizure, *see United States v. DeCatur,* 430 F.2d 365, 367 (9th Cir. 1970), or as incident to Marques' arrest, *see* 21 U.S.C. § 881(b)(1) (1976), which unquestionably occurred prior to the attaché case seizure.

5. *See also Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *United States v. Gulma,* 563 F.2d 386, 390 (9th Cir. 1977); *United States v. Evans,* 481 F.2d 990, 994 (9th Cir. 1973).

. . . [I]t is easy to say that the footlocker could be confiscated by the police and taken to the magistrate, but a seizing would then have already occurred—a substantial interference. Standing guard still represents the same interference with property rights as well as an unnecessary use of law enforcement personnel. Under these circumstances, either course might be reasonable under the Fourth Amendment, but the immediate search was preferable.

481 F.2d at 994.

Thus, prior to *Chadwick* this circuit held that luggage as well as an auto was subject to the *Chambers* option. The Supreme Court undercut that notion, however, when it said:

It was the greatly reduced expectation of privacy in the automobile, coupled with the transportation function of the vehicle, which made the Court in *Chambers* unwilling to decide whether an immediate search of an automobile, or its seizure and indefinite immobilization, constituted a greater interference with the rights of the owner. This is clearly not the case with locked luggage.

*United States v. Chadwick, supra,* 433 U.S. at 14 n. 8, 97 S.Ct. at 2485. We conclude that, by invalidating the exigent circumstances approach of our earlier cases, the *Chadwick* Court added a new wrinkle in the exclusionary rule as it had developed in this circuit.[6]

■ That being the case, retroactive operation of *Chadwick* is improper.[7] Under *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), three factors are considered in determining that a decision will not be applied retroactively. Consideration is given to whether the decision establishes a new principle of law and

to whether, in view of the history and purpose of the new rule, retroactive application will serve to promote or retard the operation of the rule. Any inequity resulting from applying the rule retroactively is also weighed. We have already expressed our opinion that the *Chadwick* decision broke new ground in applying the exclusionary rule to the kind of search at issue here. The obvious purpose in doing so was to further "safeguard individuals from unreasonable government invasions of legitimate privacy interests," *United States v. Chadwick, supra,* 433 U.S. at 11, 97 S.Ct. at 2483 (footnote omitted), by deterring police from obtaining evidence without a warrant.

■ That purpose, i. e., deterrence of police conduct contrary to the Fourth Amendment, would not be served in applying *Chadwick* to incidents which occurred before the decision. That retroactive application may operate to vindicate the rights of individuals, like appellant, who have been subjected to unreasonable police conduct under current standards is not dispositive. *Weinberg v. Mitchell,* 588 F.2d 275 (9th Cir. 1978). Inequity on both sides of the coin must be considered. As fully explored below, the officers' conduct in this case conformed in every respect to the Fourth Amendment standards of this circuit which prevailed at the time the attaché case was seized and examined. It would be inequitable to the public as well as its law enforcement personnel to invalidate the efforts which resulted in Stewart's arrest on the basis of a constitutional principle established after the fact.

■ Having concluded that *Chadwick* does not control the outcome of this appeal, we hold that the circumstances surrounding the seizure and search of the attaché case provided the officers with probable cause

---

**6.** We are aware that *United States v. Finnegan,* 568 F.2d 637 (9th Cir. 1977) can be read as suggesting that *Chadwick* represents no such clear break in the law of this circuit. We believe, however, this is an erroneous reading. *Finnegan* merely represents a holding that under its facts "the presence of probable cause and exigent circumstances rendered lawful the warrantless search of appellant's suitcase." *Id.* at 641.

**7.** *Accord, United States v. Choate,* 576 F.2d 165, 182 n. 20 (9th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978) (citing *United States v. Berry,* 560 F.2d 861 (7th Cir. 1977), *vacated,* 571 F.2d 2 (1978) (rehearing granted on the issue of *Chadwick's* retroactivity)); *United States v. Reda,* 563 F.2d 510 (2d Cir. 1977); *United States v. Montgomery,* 558 F.2d 311 (5th Cir. 1977).

and justified the immediate search.[8]  The driver of the vehicle had already been implicated in the manufacture of the methamphetamine and a quantity of the drug, freshly made, was found on his person. Moreover, the sale of a large quantity of the drug had been scheduled with the suspected manufacturer, Spencer Marques, for that very day.  Just a matter of hours before the search, Spencer had told an undercover D.E.A. agent that the deal was off because Spencer felt he was being watched by narcotics agents.  The police were justified in thwarting any attempts to hide or destroy the contraband as a result of Spencer's suspicions.

Finally, our conclusion that the search about which Stewart complains passes constitutional muster under cases relying on *Chambers,* is unaffected by the fact that Marques' vehicle was seized for forfeiture beforehand.  *E. g., United States v. McCormick,* 502 F.2d 281, 288 (9th Cir. 1974).

AFFIRMED.

---

8.   See cases cited in note 5 *supra.*