UNITED STATES of America,
Plaintiff-Appellee,

v.

Daniel STEWART, Defendant-Appellant.

No. 79–2710.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1980.

Decided March 2, 1981.

Randy Montesano, San Francisco, Cal., for defendant-appellant.

Eb F. Luckel, Jr., Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE and KENNEDY, Circuit Judges, and BURNS,* District Judge.

WALLACE, Circuit Judge:

Stewart was convicted of possession of methamphetamine with the intent to distribute, pursuant to 21 U.S.C. § 841(a)(1), and we affirmed his conviction. *United States v. Stewart*, 595 F.2d 500 (9th Cir. 1979) (per curiam) (*Stewart I*). Stewart then brought a Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255. His contention is that the Supreme Court's decision in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (*Sanders*), which was decided after his conviction, requires the suppression of certain evidence used against him. The district court denied Stewart's motion, and he appealed. We affirm.

I

The factual background of this case is detailed in *Stewart I, supra*, 595 F.2d at 501–02. In summary, Stewart was involved with two others in the illegal manufacture and sale of methamphetamine. As Stewart and one of his associates arrived at the associate's home, law enforcement officers

---

* Honorable James M. Burns, Chief United States District Judge for the District of Oregon, sitting by designation.

were in the process of a house search pursuant to a warrant. Subsequently, his associate was placed under arrest and a personal search revealed a small quantity of fresh methamphetamine. The vehicle in which they arrived was then seized pursuant to 21 U.S.C. § 881. Without a search warrant, Stewart's attache case, which was lying on the rear seat, was opened revealing the methamphetamine he later unsuccessfully attempted to suppress.

On appeal from his conviction, Stewart argued in part that the nonconsensual search of his attache case was unreasonable, despite the legality of its seizure, because "no exigent circumstances existed at the time of the search which could have excused the requirement that a warrant first be obtained." *Stewart I, supra,* 595 F.2d at 503. For this proposition, Stewart cited *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (*Chadwick*). We observed that if *Chadwick* applied, "it would require suppression of the contents of the attache case." *Stewart I, supra,* 595 F.2d at 503. That statement, however, is dicta; our holding was that *Chadwick* did not apply retroactively. Thus, because the search of Stewart's attache case occurred prior to the Supreme Court's decision in *Chadwick, Chadwick* did not apply to Stewart's case. We therefore applied our pre-*Chadwick* rule that luggage contained in a properly searched automobile could be searched without a warrant, pursuant to the automobile exception. *Id.* at 503–04, *citing United States v. Evans,* 481 F.2d 990 (9th Cir. 1973).

Stewart now argues that the Supreme Court's decision in *Sanders* requires us to apply *Chadwick* retroactively. He contends that in *Sanders,* the Court applied *Chadwick* to a search that occurred before the Court's decision in *Chadwick.* Therefore, Stewart concludes that the Supreme Court has implicitly held that *Chadwick* is to be applied retroactively. Stewart does not argue that *Sanders* itself creates any new substantive Fourth Amendment law. Rather, he rests solely on his retroactivity argument.

II

At the outset, we examine the scope of the issue before us. Because this is a section 2255 proceeding, and because of our holding in *Stewart I,* our analysis is limited to the effect of *Sanders. Stewart I* holds that *Chadwick* created new constitutional doctrine, and is not to be applied retroactively. We are therefore foreclosed from deciding that *Chadwick* is retroactive for any reason other than if we are required to do so because of *Sanders.* Thus, we cannot consider the pre-*Sanders* cases that Stewart has cited to us in which courts have held *Chadwick* retroactive. *See United States v. Schleis,* 582 F.2d 1166 (8th Cir. 1978) (en banc); *People v. Minjares,* 24 Cal.3d 410, 153 Cal.Rptr. 224, 591 P.2d 514, *cert. denied,* 444 U.S. 887, 100 S.Ct. 181, 62 L.Ed.2d 117 (1979). Our analysis is limited to the effect of *Sanders* on *Chadwick* and its resultant effect on *Stewart I.*

We are not convinced by Stewart's argument that *Sanders* implicitly holds *Chadwick* retroactive. As Stewart readily admits, *Sanders* is completely silent on the issue of *Chadwick*'s retroactivity. Although the Supreme Court in *Sanders* did apply *Chadwick* to a pre-*Chadwick* search, we do not conclude that *Sanders* compels us to overrule our previous holding in *Stewart I.* We take this view for three reasons: (A) the issue of retroactivity was not raised by the parties in *Sanders* and thus was not before the Court; (B) the holding in *Sanders* that Stewart would have us infer would be in conflict with *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); and (C) nothing in *Sanders* gives us any reason to believe that our holding in *Stewart I* that *Chadwick* was new law, was incorrect.

A.

The Supreme Court's silence on the issue of *Chadwick*'s retroactivity in its opinion in *Sanders* is hardly surprising in light of the parties' failure to raise or argue the issue. *See* Petition for Writ of Certiorari, Briefs for Petitioner, Brief for Respondent,

and Brief for Amicus Curiae, *Sanders, supra.* The Supreme Court will not ordinarily consider issues that are not raised in the certiorari petition or argued by the parties, unless the issues pertain to the Court's jurisdiction or exceptional circumstances exist. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 398, 99 S.Ct. 1171, 1175, 59 L.Ed.2d 401 (1979); *Stone v. Powell,* 428 U.S. 465, 481 n.15, 96 S.Ct. 3037, 3046 n.15, 49 L.Ed.2d 1067 (1976); *Kaufman v. United States,* 394 U.S. 217, 239 n.7, 89 S.Ct. 1068, 1080 n.7, 22 L.Ed.2d 227 (1969) (Black, J., dissenting). Because the issue of *Chadwick*'s retroactivity was not properly placed before the Court in *Sanders,* it would be improper to draw any inference from the Court's silence on that issue. If we were to hold that the Court's silence did make *Chadwick* retroactive, our overturning of the precedent of *Stewart I* would rest not on a pronouncement of the Supreme Court, but on the curious foundation that a party had failed to raise an issue. We should not deal with precedent in such a cavalier fashion.

Along the same lines, Stewart seeks to draw support for his position from our opinion in *United States v. MacKay,* 606 F.2d 264 (9th Cir. 1979). In that case, we speculated that "[t]he propriety of *Stewart* [I] must be seriously questioned in light of *Sanders* wherein the *Chadwick* rule was applied to a pre-*Chadwick* search." *Id.* at 265 n.2. We observed, however, that the facts in *MacKay* "occurred post-*Chadwick.*" *Id.* Thus, the retroactivity of *Chadwick* was not before us, and our statement was pure dictum. Therefore, that portion of *MacKay* has no precedential value.

### B.

We are also hesitant to infer a holding in *Sanders* that would be in apparent conflict with the Supreme Court's decision in *United States v. Peltier, supra.* In *Peltier,* the Court expressed a strong preference for applying new constitutional principles that related to the exclusionary rule, and not to the truth-finding function of criminal trials, prospectively only. *United States v. Pelti-*

*er, supra,* 422 U.S. at 535, 95 S.Ct. at 2316. The Court examined the twin purposes of the exclusionary rule (*i.e.,* the imperative of judicial integrity and deterrence of improper police conduct), and decided that these purposes would not be served by retroactive application of new exclusionary rule doctrines. The Court observed that deterrence could certainly not be served by retroactivity of new exclusionary rule principles. It further observed that judicial integrity would not be offended by the introduction of evidence that law enforcement officials had gained in good faith reliance on the state of the law in existence at the time, "even if decisions subsequent to the search or seizure have held that conduct of [that] type . . . is not permitted by the Constitution." *Id.* at 538, 95 S.Ct. at 2317.

In both *Sanders* and *Chadwick,* the Supreme Court held that the police must have a warrant before they may search luggage that they have legally seized from an automobile. Thus, such evidence obtained without a warrant must be suppressed under the exclusionary rule. In *Stewart I,* we held that *Chadwick* created new constitutional doctrine. Under *Peltier,* then, such a new constitutional doctrine in the realm of the exclusionary rule would not be given retroactive effect. We simply do not believe that we can infer from the Supreme Court's silence in *Sanders* a result so clearly contradictory to the teachings of *Peltier.* If the Supreme Court were to hold that *Chadwick* were, in fact, retroactive, we think it would surely be explicit in its overruling or distinguishing of *Peltier.* *See United States v. Calandrella,* 605 F.2d 236, 252 (6th Cir.), *cert. denied sub nom. Kaye v. United States,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

### C.

Finally, *Sanders* gives us no additional reason to believe that *Chadwick* is not new law. The Supreme Court was quite explicit in stating its reasons for granting certiorari in *Sanders.* It stated that it took the case "to resolve some apparent misunderstanding as to the application of our decision in

*United States v. Chadwick ...."* *Sanders, supra,* 442 U.S. at 754, 99 S.Ct. at 2588. The Court then cited our opinion in *United States v. Finnegan,* 568 F.2d 637 (9th Cir. 1977) *(Finnegan),* and the Eighth Circuit's opinion in *United States v. Stevie,* 582 F.2d 1175 (8th Cir. 1978) (en banc), *cert. denied,* 443 U.S. 911, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). The import of the Court's opinion in *Sanders* is that our interpretation in *Finnegan* that *Chadwick* did not affect the automobile search exception to the warrant requirement of the Fourth Amendment was incorrect. In *Finnegan,* we held that *Chadwick* "was concerned with the creation of whole, new *classes* of objects to be excepted from general proscription against warrantless searches rather than with the scope of the automobile search exception." *United States v. Finnegan, supra,* 568 F.2d at 640 (emphasis in original). We concluded that a warrant was not required for the search of a suitcase seized from an automobile because the movable nature of the automobile provided an exigent circumstance justifying a warrantless search when there is probable cause. In *Sanders,* the Court explicitly held that luggage contained in an automobile could not be searched without a warrant unless there were special exigencies present apart from the location of the luggage in the automobile. *Sanders, supra,* 422 U.S. at 763–66, 99 S.Ct. at 2592–2594 & n.11, *citing Chadwick.* Thus, it is clear that *Finnegan* was an incorrect interpretation of *Chadwick.* *Finnegan,* however, relied heavily on our previous opinion in *United States v. Evans, supra.* In *Evans,* we also reached the conclusion that luggage contained inside an automobile could be searched without a warrant because its location in the automobile provided a sufficiently exigent circumstance to permit a warrantless search pursuant to the automobile exception. We have seen no authority, in either *Sanders* or *Chadwick,* to suggest that *Evans* was incorrect when it was decided. Therefore, *Chadwick,* which reached a result inconsistent with the result in *Evans,* was new law [1]

and, under *Peltier,* should not be applied retroactively, as we held in *Stewart I.* Nothing in *Sanders* suggests a different result.

We conclude, then, that *Sanders* does not require us to apply *Chadwick* retroactively. Thus, *Chadwick* does not apply to Stewart's case, and he is not entitled to have his judgment of conviction vacated.

AFFIRMED.

---

[1] We observe that *Chadwick* changed the law in other circuits as well. *See United States v. Calandrella,* 605 F.2d 236, 251–52 (6th Cir.), *cert. denied sub nom. Kaye v. United States,* 444 U.S. 991, 100 S.Ct. 522, 162 L.Ed.2d 420 (1979), and cases cited therein.